**In re the Disciplinary Matter Involving Helen L. SIMPSON, Respondent Attorney.**

No. 5963.

Supreme Court of Alaska.

June 11, 1982.

Helen L. Simpson, pro se.

Richard J. Ray, Anchorage, for Alaska Bar Ass'n.

## OPINION

Before BURKE, C. J., and RABINOW-ITZ, CONNOR, MATTHEWS and COMPTON, JJ.

COMPTON, Justice.

At issue in this case is whether the Disciplinary Board of the Alaska Bar Association properly concluded that Helen L. Simpson, an attorney in Alaska, violated two disciplinary rules of the Code of Professional Responsibility. We also assess the propriety of the Board's recommendation that in addition to other sanctions Simpson receive public censure.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 1980, the Area II Disciplinary Hearing Committee of the Alaska Bar Association held a hearing to determine whether two unrelated instances of Simpson's professional conduct violated the disciplinary rules. The purported misconduct concerned the management of an office trust account and an inaccurate response to an interrogatory. The Hearing Committee concluded that Simpson had violated two disciplinary rules.

The record of the hearing and the findings and recommendations of the Hearing Committee were then presented to the Disciplinary Board. Simpson filed a supplemental affidavit in support of her position. In addition, the Disciplinary Board heard oral argument. Following consideration of this evidence, the Disciplinary Board issued twenty findings of fact and two conclusions of law regarding Simpson's conduct.

In its first conclusion of law, the Board found that Simpson had commingled in her office trust account her own funds with those of her clients in violation of Disciplinary Rule (hereafter DR) 9–102(A) of the Code of Professional Responsibility.[1]

Simpson's management of her office trust account came into question in December 1978 when the Alaska Bar Association received from Simpson a check in payment of her 1979 Bar dues drawn on her office trust account. By letter of December 5, 1978, the Disciplinary Administrator of the Bar Association sought an explanation of why the check was drawn on the office trust account, not a personal account. Simpson did not respond to this letter. Several months later, the Disciplinary Administrator again wrote to Simpson requesting an explanation, and again Simpson did not respond.[2]

Subsequently, the Bar Association received Simpson's trust account records and had them audited. The audit indicates she commingled in her trust account personal funds and those of her clients. She paid both personal and office expenses with trust account money.

In its second conclusion, the Board found that Simpson had permitted her client to give a response to an interrogatory which Simpson knew or should have known was false. Such conduct breached DR 1–102(A)(4), which prohibits a lawyer from engaging in "dishonesty, fraud, deceit, or misrepresentation."[3]

---

1. DR 9–102(A) reads:

   All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
   (1) Funds reasonably sufficient to pay bank charges may be deposited therein.
   (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is

   disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

2. The letters were introduced into evidence before the Hearing Committee. Simpson admitted before the Hearing Committee that she never responded to the February 21 letter.

3. DR 1–102(A) provides:
   A lawyer shall not:
   (1) Violate a Disciplinary Rule.
   (2) Circumvent a Disciplinary Rule through actions of another.
   (3) Engage in illegal conduct involving moral turpitude.

The interrogatory in dispute was propounded in the course of a medical malpractice action which Simpson filed in May 1978 on behalf of Doris S. Hoagland. Dr. Michael Hein was the defendant. In connection with the litigation, Medi-Legal Services sent Simpson a letter dated January 10, 1979. The letter was received in Simpson's office and bears the handwritten notation "rec'd 1–17–79." This letter discussed Dr. Hein's treatment of Hoagland.

On or about January 19, 1979, Simpson received a set of interrogatories directed to Hoagland. Interrogatory 15 asked:

> You and your attorney have previously indicated that you have utilized a medical-legal consulting service in Southern California, specifically Medi-Legal Services, Post Office Box 599, El Cajon, California 92022; have you or your attorney ever received a written communication or report from Medi-Legal Services relating to defendant's treatment of plaintiff or to the casual [sic] connection between the use of hydrogen peroxide as an intra-abdominal irrigant in the development of adhesions.

Simpson dictated the answers to the set of interrogatories on the weekend of January 20 and 21. She answered question 15 "no" when in fact the answer was "yes." Her client Hoagland signed the answers to all the interrogatories on March 26 and her secretary notarized the client's signature.

Simpson argued before the Board that the inaccurate answer resulted from several unfortunate circumstances. Simpson, who practices in Anchorage, noted that she was not in Anchorage on January 17 when the Medi-Legal Services report was received.

She claimed to have dictated the interrogatory answers on the weekend of January 20 and 21 without yet knowing that the Medi-Legal Services report had been received. She further claimed that after dictating the answers, she never reviewed the interrogatories or answers. On January 25, she left for South America and did not return until February 21. It was yet another month before Simpson realized that the responses to the interrogatories had not been transcribed and presented to the client for signature. That was accomplished on March 26, several months after Simpson claims she originally dictated the response that is now in dispute. The Board, however, found that the inaccurate response was either intentional or the result of gross negligence.

Having concluded that Simpson violated two disciplinary rules, DR 9–102(A) and DR 1–102(A)(4), the Board recommended several sanctions. First, the Board recommended that for one year Simpson provide the Bar Association a monthly letter from a certified public accountant stating that an audit showed that Simpson's office trust account was managed properly. Second, the Board recommended that Simpson hire a law office management consultant to develop proper office procedures for her practice. If Simpson failed to adopt the Board's recommendations regarding the accountant and consultant, the Board stated that it would recommend her suspension from the legal profession for six months. Finally, the Board recommended that Simpson receive public censure.

Pursuant to Alaska Bar Rule II–15(j), we now review this case.[4] Simpson argues be-

---

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

**4.** Alaska Bar Rule II–15(j) provided:
If the Board has recommended [disbarment, suspension or public censure] as provided in Rule 12(a), (b) or (c), the Board shall submit the record, which shall include a transcript of all proceedings before the Board, with briefs to be submitted in accordance with Appellate

Rule 11. Unless the Respondent or the Administrator makes a written request to the Court for oral argument within the date established for the submission of briefs, oral argument shall be waived. If neither the Respondent nor the Administrator objects to the conclusions and recommendations of the Board, the submission of briefs may be waived by stipulation, subject to approval by the Court. The Court shall review the record and briefs and enter an appropriate order. Proceedings before the Court shall be conducted by the Administrator.

fore us that the Board erred in concluding that she violated DR 1–102(A)(4) and in recommending that she receive public censure.

## II.  STANDARD OF REVIEW

We first address a preliminary matter. Simpson argues that findings of fact 7, 8, 9, 10 and 20 are not supported by the record. It is appropriate, here, to set forth the applicable standard of review where a finding of fact entered by the Disciplinary Board is challenged on appeal.

Many of our prior cases reflect application of an "independent evaluation of the evidence" standard of review, though none of these cases explicitly address the issue. *In re Preston*, 616 P.2d 1, 6–7 (Alaska 1980); *In re Mackey*, 416 P.2d 823 (1964), *on rehearing* 416 P.2d at 835 (1965), *reconsideration denied*, 416 P.2d at 840 (1966); *cert. denied*, 384 U.S. 1003, 86 S.Ct. 1907, 16 L.Ed.2d 1016 (1966). In one case, *In re Peterson*, we held that our review of such findings of fact was to be limited by the "substantial evidence" standard of review. 499 P.2d 304, 306 (Alaska 1972). At the time *Peterson* was decided, however, the Alaska Bar Association was subject to the provisions of the Alaska Administrative Procedure Act, AS 44.62.010–.650. The Act provided that the "substantial evidence" test was appropriate in such instances. AS 44.62.570(c)(2). The legislature amended the pertinent statutes in 1976 to provide that the Alaska Bar Association is not subject to the Act.[5]  AS 08.08.100; *see Horowitz v. Alaska Bar Association*, 609 P.2d 39 (Alaska 1980). Accordingly, the rule enunciated in *Peterson* is not dispositive of this issue.

■■■  This court has inherent authority to discipline attorneys licensed to practice in Alaska.  *In re Mackey*, 416 P.2d at 830; *In re Paul*, 17 Alaska 360, 366–68 (D.Alaska 1957); *see In re Stump*, 621 P.2d 263, 269–

70 (Alaska 1980) (Burke, J., dissenting). In this regard, Bar Rule II–9 provides that "[a]ny attorney admitted to practice law in Alaska . . . is subject to the supervision of the Supreme Court of Alaska. . . ."  In exercising our solemn obligation to make the ultimate determination of whether it is appropriate to discipline an attorney, this court must independently review all factual circumstances surrounding the conduct in dispute.  Indeed, Bar Rule II–15(j) provides that where the Board recommends disbarment, suspension for less than five years, or public censure, "[t]he court *shall review the record* and briefs and enter an appropriate order."  (Emphasis supplied.)  It is noteworthy that in review of analogous findings, findings of fact entered by the Commission on Judicial Qualifications, we apply an "independent evaluation of the evidence" standard of review.  *In re Hanson*, 532 P.2d 303, 309 (Alaska 1975).  We stated in *Hanson* :

> "[S]ince the ultimate dispositive decision to censure or remove a judge has been entrusted to this court, we conclude that in exercising that authority and in meeting our responsibility we must make our own independent evaluation of the record evidence adduced below . . . .  Finally, it is to be our findings of fact and conclusions of law, upon which we are to make our determination of the ultimate action to be taken, to wit, whether we should dismiss the proceedings or order the judge censured or removed from office."

532 P.2d at 308–09, *quoting Geiler v. Commission on Judicial Qualifications*, 10 Cal.3d 270, 110 Cal.Rptr.2d 204, 515 P.2d 1, 4 (Cal. 1973) (footnotes omitted).

Though this court has the authority, if not the obligation, to independently review the entire record in disciplinary proceedings, findings of fact made by the Board are nonetheless entitled to great weight. The deference owed to such findings derives from the responsibility to conduct discipli-

---

Subsequent to the initiation of this case, Bar Rule II–15(j) was amended by Supreme Court Order No. 467 (Eff. 6/1/81). The amendment does not vary the text quoted above, but provides that attorney's fees incurred by the Asso-

ciation in connection with such proceeding may be assessed against the respondent.

**5.**  Ch. 181, §§ 8, 11, SLA 1976.

nary proceedings which this court has delegated to the Bar Association. Where findings of fact entered by the Board are challenged on appeal to this court, we therefore hold that the respondent attorney bears the burden of proof in demonstrating that such findings are erroneous. *In re Haggard*, 597 P.2d 180, 181 (Ariz.1979) (in banc); *Baranowski v. State Bar*, 24 Cal.3d 153, 154 Cal.Rptr. 752, 756, 593 P.2d 613, 617 (Cal. 1979) (in banc); *In re Lutz*, 100 Idaho 45, 592 P.2d 1362, 1365 (1979); *In re Johnson*, 597 P.2d 740, 742 (Mont.1979). As a general rule, moreover, we ordinarily will not disturb findings of fact made upon conflicting evidence, *In re Miller*, 625 P.2d 701, 703 (Wash.1981) (en banc), or where such findings reflect the relative credibility of witnesses. *Baranowski v. State Bar*, 24 Cal.3d 153, 154 Cal.Rptr. at 756, 593 P.2d at 617.

▋ Upon our review of the record we conclude that in all material respects [6] the findings of fact entered by the Board are supported by the record.[7]

### III. THE INTERROGATORY RESPONSE

Simpson next argues that her conduct with regard to the interrogatory did not constitute a violation of DR 1–102(A)(4). The Disciplinary Board concluded that either Simpson knew that the answer to the interrogatory was false, or that her lack of knowledge constituted gross negligence. In finding 18 the Board stated:

At the time Respondent's client Doris S. Hoagland signed the answers to the

second set of interrogatories, the Respondent knew or should have known that the answer to interrogatory number 15 was false.

Finding 19 states in part:

Even if Respondent's explanations are accepted on full faith, they evidence a gross lack of due care by Respondent.

Finding 20 reads:

Respondent followed grossly inadequate office procedures evidencing a disregard for her client's affairs and her professional responsibilities.

Simpson submits that the conduct prescribed by DR 1–102(A)(4)—fraud, dishonesty, deceit or misrepresentation—are all intentional acts of misconduct. She argues that since the Disciplinary Board did not find by a preponderance of the evidence that she intentionally answered interrogatory 15 falsely, it was improper to adjudge her in violation of DR 1–102(A)(4). The dispositive question, therefore, is whether grossly negligent misconduct, as well as intentional misconduct, is within the ambit of DR 1–102(A)(4).

▋ We agree that DR 1–102(A)(4) is restricted to intentional acts of misconduct. *See In re Stump*, 621 P.2d at 264, 266–68; *Buchanan v. State*, 554 P.2d 1153, 1162 (Alaska 1976). Accordingly, we conclude that a misrepresentation which is determined to be the result of gross negligence does not constitute a violation of DR 1–102(A)(4). Though not within the ambit of DR 1–102(A)(4), Simpson's gross negligence

---

6. Finding of fact 10 provides in part:

Although she kept separate ledger cards for each account, she failed to establish and maintain the necessary separate bank accounts in order to avoid her personal use of client's funds even if such use may have been inadvertent or temporary and may not have resulted in harm to her clients.

In a letter to the Bar Association, the auditors stated: "The information that we have does not show where each client of Helen Simpson's stands regarding money owed to or from them. We were able to determine, however, that on April 24, 1978, and December 28, 1978, the Trust Account was overdrawn." Simpson submits that there is no evidence that she made personal use of clients' funds. In this regard,

Simpson explained the circumstances surrounding the two instances in which the account was overdrawn. We need not resolve this conflict, however, since the disputed portion of finding of fact 10 is not relevant to our disposition of this case.

7. We are constrained to note, though, that in their brief, the Bar Association ignored Simpson's challenges to the findings. In the future, whenever an attorney challenges a finding, the Bar should respond. If the challenge is that the record does not support the finding, the Bar should point to those places in the record which it feels provide support for the finding of fact.

in submitting an inaccurate response to an interrogatory is nonetheless violative of the Disciplinary Rules.[8] A misrepresentation resulting from gross negligence is proscribed by DR 6–101.[9] It follows, further, that the failure to act competently, the DR 6–101 violation, is itself a violation of DR 1–102(A)(1). Alternatively, Simpson's inaccurate interrogatory response is also a violation of DR 1–102(A)(5) and (6).[10] We recognize that other, less egregious acts of misconduct, such as a misrepresentation resulting from mere negligence,[11] could be classified similarly. The Disciplinary Rules contemplate, however, that in this instance the egregious quality of Simpson's misconduct should be considered in fashioning an appropriate sanction, not in the classification of the infraction itself.

## IV. SANCTIONS

Simpson also contends that the Disciplinary Board's recommendation of public censure is too harsh. She submits that the expense she will incur from hiring the certified public accountant and law office management consultant, as recommended by the Disciplinary Board, constitutes sufficient punishment.

In deciding the appropriate punishment, we need not accept the Disciplinary Board's recommendation, but may exercise our own independent judgment. *In re Mackay*, 416 P.2d at 842; *In re Stump*, 621 P.2d at 266; *In re Preston*, 616 P.2d at 6.

We find no merit to Simpson's argument that public censure is unwarranted. The propriety of the public censure sanction is supported by two considerations. On the one hand, Simpson's prior disciplinary record is relevant. *People v. Wallin*, 621 P.2d 330, 332 (Colo.1981); *State v. Leon*, 229 Kan. 178, 621 P.2d 1016, 1018 (1981); *Attorney Grievance Commission v. Pollack*, 289 Md. 603, 425 A.2d 1352, 1355 (1981). In 1977, Simpson was informally admonished for not administering her office trust account properly. Specifically, Simpson had violated DR 9–102(B)(3) and (4) by failing to maintain complete records of all funds which came into her possession, failing to render appropriate accounts of these funds to one of her clients and the court, and failing to deliver promptly all the funds she possessed which the client was entitled to receive. Further, in order to correct such deficient trust account practices, Simpson was admonished to adopt adequate bookkeeping procedures and to segregate her clients' funds from her personal funds.[12]

Simpson failed to heed this admonition against commingling. While no client suffered financial loss due to Simpson's commingling, such deplorable trust account practices can only leave clients vulnerable to financial loss. *See Heavey v. State Bar*, 17 Cal.3d 553, 131 Cal.Rptr. 406, 410, 551 P.2d 1238, 1242 (Cal.1976).

On the other hand, we note that Simpson's gross negligence in responding to an interrogatory inaccurately is itself such a serious infraction of the Disciplinary Rules

---

**8.** Since Simpson had ample opportunity to respond to the allegations concerning the preparation of a false response to an interrogatory, it is not necessary to remand this matter to the Board for further proceedings.

**9.** DR 6–101 provides:

*Failing to Act Competently*

(A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him.

**10.** *See supra* note 3.

**11.** *Leavitt v. Gillaspie*, 443 P.2d 61, 65 (Alaska 1968) (gross negligence entails conduct more egregious than mere negligence).

**12.** The information regarding the 1977 disciplinary matter is contained in the Disciplinary Board's finding of fact 7. The evidence in the record supporting this finding is the Hearing Committee's 1977 report. Simpson contends in her brief to this court that the report is inadmissible hearsay. We are precluded from considering this issue, however, since Simpson did not object to the report's introduction at the hearing held by the Hearing Committee. *See Storrs v. Lutheran Hosps. and Homes Soc'y of America, Inc.*, 609 P.2d 24, 28 n.13 (Alaska 1980).

that public censure is warranted. It is noteworthy, in this regard, that we publicly censured an attorney for inexcusable neglect, *In re Collins*, 583 P.2d 207 (Alaska 1978), conduct which is less culpable than the gross negligence at issue in this case.

## V. CONCLUSION

We conclude that Simpson's gross negligence in responding to an interrogatory and her trust account practices constituted violations of the Disciplinary Rules. Further, in light of the gravity of Simpson's misconduct, we adopt the Disciplinary Board's recommended sanctions, including the recommendation that Simpson receive public censure.