Homer L. BURRELL, Appellant,

v.

**DISCIPLINARY BOARD OF the ALAS-
KA BAR ASSOCIATION, Appellee.**

No. S–525.

Supreme Court of Alaska.

July 5, 1985.

Homer L. Burrell, Anchorage, in pro.
per.

Teresa Williams, Asst. Discipline Di-
rector, Anchorage, for appellee.

Before RABINOWITZ, C.J., and
BURKE, MATTHEWS, COMPTON and
MOORE, JJ.

OPINION

RABINOWITZ, Chief Justice.

Homer L. Burrell appeals from the Alas-
ka Bar Association Disciplinary Board's
findings of fact and conclusions of law
holding that Burrell had violated Discipli-
nary Rules 4–101(B)(1), 5–105(A), 7–106(A),
1–102(A)(5), 1–102(A)(6), and Canons 5 and
9 of the Code of Professional Responsibili-
ty.

Burrell represented James Hanger in
connection with a charge of driving while
intoxicated. The charge arose out of an
automobile accident in December 1978.
Hanger's passenger, Lynne Maiden, re-
ceived injuries in the accident. Burrell sub-
sequently met and married Lynne Maiden.

In May 1980, Burrell simultaneously
filed two complaints against Hanger. One
complaint was for attorney's fees, owed for
his representation of Hanger on the drunk

driving charge. The other complaint was a personal injury claim on behalf of Lynne Maiden, now Lynne Burrell, for the injuries she sustained in the December 1978 accident. Burrell listed himself as attorney of record in both complaints.

In March 1981, Hanger moved to have Homer Burrell removed as counsel for Lynne Burrell. The motion was grounded on the theory that Burrell had a conflict of interest due to his representation of Hanger in connection with the criminal charges arising out of the same accident. After the hearing, the superior court ordered Burrell disqualified from assisting his wife or her subsequent counsel in the continued preparation for trial of the civil action.

Before the entry of the order disqualifying him, but after he had notice of the disqualification motion, Burrell prepared detailed instructions and pleadings for Lynne Burrell to use while acting as her own counsel in maintaining the civil litigation against Hanger. Lynne never consulted with any other attorney concerning her case, and never added to or altered any of the documents that Burrell had prepared for her use in the Hanger litigation. Burrell admitted during the hearing before the Area Hearing Committee (Hearing Committee) that he drafted one document for Lynne after receipt of the superior court's order disqualifying him.

Additionally, both before and after entry of the disqualification order, Burrell consulted with attorney Charles Hagans about the civil case against Hanger. Hagans tes-tified that he discussed the merits of the case with Burrell. Hagans' billing records indicate that Burrell was billed for a half hour phone conversation on July 6, 1981, for an hour and a half conference on July 23, and for a two hour conversation on August 4.

The Bar Association's petition for a formal hearing alleged that Burrell, in representing Lynne against his former client James Hanger, created a conflict of interest; that Burrell knowingly violated the order disqualifying him from representing Lynne; that Burrell knowingly revealed confidences of his former client, James Hanger; that Burrell used the confidence's of James Hanger against him; and that Burrell engaged in conduct which adversely reflected upon his fitness to practice law. After a full hearing, the Hearing Committee concluded that Homer Burrell's representation of Lynne Burrell was "tantamount to disclosure of [the] confidences of Mr. Hanger, and therefore violated DR 4–101(B)(1)."[1] Additionally, the Hearing Committee found that Burrell violated Canon 5 of the Code of Professional Responsibility,[2] that Burrell should have declined to represent Lynne Burrell,[3] that Burrell's representation of Lynne gave the appearance of impropriety,[4] that Burrell disregarded a standing order of a tribunal when he continued to represent Lynne after the entry of the order disqualifying him,[5] that Burrell's conduct was prejudicial to the administration of justice,[6] and that

---

**1.** Disciplinary Rule 4–101(B)(1) of the Alaska Code of Professional Responsibility reads as follows:

(B) Except when permitted under DR 4–101(C) and (D), a lawyer shall not knowingly during or after termination of the professional relationship to his client:
(1) Reveal a confidence or secret of his client.

**2.** See Alaska Code of Professional Responsibility Canon 5: "A lawyer should exercise independent professional judgment on behalf of a client."

**3.** See Alaska Code of Professional Responsibility DR 5–105(A): "A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected...."

**4.** See Alaska Code of Professional Responsibility Canon 9: "A lawyer should avoid even the appearance of professional impropriety."

**5.** See Alaska Code of Professional Responsibility DR 7–106(A): "A lawyer shall not disregard ... a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding...."

**6.** See Alaska Code of Professional Responsibility DR 1–102(A)(5): "A lawyer shall not: Engage in conduct that is prejudicial to the administration of justice."

Burrell's conduct adversely reflected upon his fitness to practice law.[7]

The Disciplinary Board adopted the Hearing Committee's findings of fact and conclusions of law, and recommended that Burrell be suspended from practice for 90 days, with his reinstatement contingent upon his passage of the Multistate Professional Responsibility Examination. This appeal followed.

## I.

▮▮▮▮ Initially, we turn to the allegation that Burrell was involved in a conflict of interest.[8] The prohibition against engaging in conduct which results in a conflict of interest can be inferred from numerous code provisions. Canon 4 provides that an attorney should "preserve the confidences and secrets of a client," while Ethical Considerations 4–5 and 4–6 admonish attorneys to take care in preventing the disclosure of any confidential information, both during and after representation. Canon 9 requires attorneys to avoid even "the appearance of professional impropriety," and Disciplinary Rule 5–105 provides that an attorney should refuse employment when the "interests of another client may impair the [attorney's] independent professional judgment." [9]

In *Aleut Corporation v. McGarvey*, 573 P.2d 473, 474–75 (Alaska 1978), we dealt with a conflict of interest issue in the context of a motion to disqualify counsel. *Aleut* holds that an attorney may not represent a third party against a former client where there exists a substantial possibility that knowledge gained by the attorney in the former professional relationship could be used against the former client, or where the subject matter of the present undertak-

ing has a substantial relationship to the prior representation. *See also Chugach Electric Assoc. v. United States District Court for the District of Alaska*, 370 F.2d 441 (9th Cir.1966).

The superior court, in its memorandum decision disqualifying Burrell from representing Lynne in her civil action against Hanger, specifically found that both elements of the *Aleut* test were met. In reaching this determination the superior court stated:

> Specifically, the Court finds that there exists a substantial possibility that knowledge gained by plaintiff's counsel in his earlier professional relationship with defendant Hanger in the criminal case can be used against defendant Hanger in this action. Plainly, information and knowledge communicated by defendant Hanger to counsel in connection with the drunk driving charge, such as whether defendant Hanger had consumed alcoholic beverages on the evening in question, how much alcoholic beverages defendant had consumed, how defendant had been driving, the relationship and position of the other vehicle in the accident, and numerous other facts, could now be used by counsel against defendant in this action.
>
> Secondly, the Court specifically finds that the subject matter of the instant action has a substantial relationship to that of the criminal proceeding in which counsel represented defendant Hanger. The question of defendant Hanger's alleged intoxication and driving behavior are central to both the criminal proceeding and the instant civil action. Similarly, the events of the evening of December 23, 1978, the vehicular collision which

---

7. *See* Alaska Code of Professional Responsibility DR 1–102(A)(6): "A lawyer shall not: Engage in any other conduct that adversely reflects on his fitness to practice law."

8. In matters concerning attorney discipline this court has the authority to independently review the entire record, although, as a general rule, the Disciplinary Board's findings are entitled to great weight. *In re Simpson*, 645 P.2d 1223, 1226 (Alaska 1982).

9. We note that, unlike the Disciplinary Rules, which are mandatory and state minimum levels of conduct below which a lawyer becomes subject to disciplinary action, the Canons are only statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of attorneys. *See* Alaska Code of Professional Responsibility, Preliminary Statement.

ensued, the vehicles involved in the collision, the driver and passengers of both vehicles, witnesses to the accident, road conditions and weather conditions, and the like, are all identical in both actions.

█ We agree with the superior court's analysis, and hold that Homer Burrell was involved in a conflict of interest when he represented Lynne Burrell in her action against his former client James Hanger. Therefore, we affirm the Alaska Bar Association Disciplinary Board's conclusions of law that Burrell violated Canon 5, DR 5–105(A), and Canon 9, of the Alaska Code of Professional Responsibility.[10]

█ The Area Hearing Committee also concluded that Burrell's representation of Lynne "was tantamount to disclosure of confidences of Mr. Hanger, and therefore violated DR 4–100(B)(1)." [11] We disagree and hold that the evidence is not sufficient to support the conclusion that Burrell actually "[r]eveal[ed] a confidence or secret" of his former client.

## II.

We next address the question of whether Burrell violated the superior court's disqualification order.[12] The superior court's order read in part:

Homer L. Burrell is disqualified from further serving as plaintiff's counsel in this action, and may not assist plaintiff and/or her subsequent counsel in the continued preparation for and trial of this cause of action. Nor may counsel, without the express written consent of defendant Hanger, communicate with plaintiff and/or her subsequent counsel, any confidences, information, knowledge, facts or secrets which he obtained from defendant Hanger about the December 23, 1978 collision in connection with his earlier representation of defendant Han-

ger on the criminal charges stemming from the same incident.

The Hearing Committee found that Burrell continued to represent Lynne after the May 28, 1981 order disqualifying him. In adopting the Hearing Committee's findings, the Disciplinary Board went on to say:

[Homer Burrell's] testimony that he merely prepared pleadings in advance and in anticipation of an Order of Disqualification and was only a messenger between his wife and Mr. Hagans is not credible.

The record reflects that the attorney with whom Burrell consulted billed Burrell for over three hours of conferences and telephone conversations, which occurred after the entry of the disqualification order. Additionally, Burrell admitted that there was one pleading which he did not prepare in advance of the entry of the disqualification order. Given this evidence, we agree with the Board's findings that Burrell disregarded the disqualification order and was thus in violation of DR 7–106(A), DR 1–102(A)(5), and DR 1–102(A)(6) of the Alaska Code of Professional Responsibility.[13]

## III.

█ Lastly, we turn to the question of what sanction, if any, should be imposed in the case at bar. A determination of the appropriate disciplinary action is based upon all relevant factors, including any mitigating circumstances and the respondent's prior disciplinary record. *In re Disciplinary Matter Involving Evans,* 661 P.2d 171, 176 (Alaska 1983); *In re Stump,* 621 P.2d 263, 265 n. 10 (Alaska 1980).

Homer Burrell's representation of Lynne Burrell in a civil suit against James Hanger constituted a conflict of interest, which is a clear and significant violation of the Code of Professional Responsibility. There is

---

**10.** *See supra* notes 2 through 4 for the text of the rules.

**11.** *See supra* note 1.

**12.** Burrell also argued that the motivation of Hanger and the Board, and Hanger's ten month

delay in filing his motion to disqualify, barred any action against him. We find that both contentions are meritless.

**13.** *See supra* notes 5 through 7.

also more than adequate evidence in the record which demonstrates that Burrell violated the terms of the superior court's disqualification order. Actions like Burrell's seriously undermine the public's confidence in Alaska's legal system. Additionally, we think it of importance that Burrell demonstrated a lack of appreciation of the wrongfulness of his actions.

We therefore order Burrell suspended from the active practice of law for 90 days with reinstatement conditioned on passage of the Multistate Professional Responsibility Examination.[14]

---

14. The Board should adjust the date the suspension will commence so that its conclusion will not precede the date on which the results of the MPRE become available.