In the DISCIPLINARY MATTER INVOLVING William T. FORD, Respondent.

No. S–11504.

Supreme Court of Alaska.

Jan. 27, 2006.

Robert C. Erwin, Erwin & Erwin, LLC, Anchorage, for Respondent.

Mark Woelber, Assistant Bar Counsel, Alaska Bar Association.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Although the superior court directed attorney William T. Ford to deposit a $20,000 check in Ford's client trust account, Ford mailed the uncashed check back to the out-of-state payor. Because Ford knowingly "disobey[ed] an order of a tribunal" in violation of Alaska Rule of Professional Conduct 3.4(c), the disciplinary board of the Alaska Bar Association recommended that Ford be suspended from practice for ninety days. In exercising our responsibility for attorney discipline in Alaska, we independently conclude that a ninety-day suspension is appropriate under the facts presented. We therefore order Ford suspended for ninety days.

## II. FACTS AND PROCEEDINGS

The facts in this case are undisputed. William T. Ford is an attorney licensed to practice in Alaska. In 2000 he was hired to represent Gary Green in a post-trial divorce proceeding. Following entry of the final divorce decree, Green's ex-wife asked the superior court to order the sale of property to satisfy the $105,000 judgment. Green did not have $105,000 to post a supersedeas bond pending appeal. Ford suggested to Green that if Green could borrow money to at least cover the interest on the judgment, they might negotiate a stay of execution. Green borrowed $20,000 from a relative, who sent to Ford's office a cashier's check payable to Ford. At a superior court hearing on the motion to sell the property, Ford offered the $20,000 on behalf of his client to obtain a stay of execution. The superior court agreed with that proposal and opposing counsel prepared a proposed order directing that the $20,000 check be deposited in Ford's trust account and that the funds then be transferred to opposing counsel. The proposed order, however, did not provide for a stay of execution. Ford objected to this omission but the superior court signed the order as proposed. After conferring with his client, Ford did not deposit the check in the trust account but returned the uncashed check to the lender. Ford then notified opposing counsel of what he had done. When Green was unable to obtain other funds to satisfy the court order, the superior court referred the matter to the Alaska Bar Association.

Bar counsel petitioned for a formal hearing, alleging that Ford had violated Alaska

Rule of Professional Conduct 3.4(c).[1] The hearing committee granted the Bar Association's petition for summary judgment on the issue of misconduct. It then held a hearing on the issue of sanctions and determined that a thirty-day suspension was appropriate. The disciplinary board reviewed the hearing committee's decision and adopted the committee's findings of fact and conclusions of law regarding misconduct. But it rejected, by a vote of five-to-three, the hearing committee's proposed sanction and instead recommended a ninety-day suspension. Ford appealed.

We initially remanded this case to the disciplinary board because the board did not explain why it had recommended a longer suspension than the hearing committee had proposed, and because it had not explained how earlier violations by Ford affected the board's analysis. On remand, the disciplinary board made additional findings, and unanimously recommended a ninety-day suspension.

## III. DISCUSSION

### A. Standard of Review

■ "Bar counsel has the burden of proving the charges of misconduct in a petition for formal hearing by clear and convincing evidence. This court reviews the evidence adduced before the hearing committee independently while giving deference to the findings of the board."[2] "We determine sanctions on a case-by-case basis, guided but not constrained by the American Bar Association's Standards for Imposing Lawyer Sanctions and by the sanctions imposed in comparable disciplinary proceedings."[3]

### B. Summary Judgment

■ Ford submits that he has "found no case involving professional discipline of an attorney in Alaska where the decision on 'liability' was decided without a hearing." He refers to *In re Friedman*[4] and *In re Triem*[5] and argues that "a reading of [these cases] reveals that the Alaska Supreme Court affirmed the findings ... only after finding that additional evidence bolstered the original decision in *Friedman* and after a hearing was in fact held in *Triem*." But these decisions do not indicate that the hearing committee is prohibited from granting summary judgment on the issue of misconduct. Summary judgment is proper if there is no genuine issue of material fact.[6] We see no reason why the standard governing summary judgment should be different in the disciplinary context.[7]

■ Conduct Rule 3.4(c) provides that a lawyer shall not knowingly violate a court

1. Alaska Rule of Professional Conduct 3.4(c) provides: "A lawyer shall not knowingly violate or disobey an order of a tribunal or the rules of a tribunal except for an open refusal based on an assertion that the order is invalid or that no valid obligation exists."

2. *In re Friedman*, 23 P.3d 620, 625 (Alaska 2001) (internal quotation marks omitted).

3. *Id.* at 625 (internal citations omitted).

4. *In re Friedman*, 23 P.3d 620, 626 (Alaska 2001). In *In re Friedman* the hearing committee made a finding of intent on summary judgment. *Id.* at 624. We stated:

 Although we are unenthusiastic about a finding of intent on summary judgment, the procedure followed here probably cured any procedural deficiency: first, after hearing Friedman's extensive testimony at the sanction hearing, the hearing committee made additional findings and conclusions; second, the board independently considered the committee's proceedings, findings, and conclusions, as well as the record.
 *Id.*

5. *In re Triem*, 929 P.2d 634 (Alaska 1996). In *In re Triem* the committee made a finding of intent "[a]fter briefing was completed and without oral argument or testimony." *Id.* at 639. The board, on appeal, heard oral argument. *Id.* at 640. We affirmed. *Id.* at 649.

6. *Cf. Odsather v. Richardson*, 96 P.3d 521, 523 n. 2 (Alaska 2004) (noting that summary judgment is proper when "the record presents no genuine issues of material fact and the movant is entitled to judgment as a matter of law").

7. Other jurisdictions addressing this issue have also so held. *See, e.g., The Florida Bar v. Mogil*, 763 So.2d 303, 308 (Fla.2000) (holding that summary judgment was proper in disciplinary proceeding in which attorney had "conceded the issue of guilt" despite attorney's desire to "have an opportunity to argue his version of the facts in mitigation of discipline").

order.[8] Ford did not deny that he knowingly violated the superior court's order; rather, he denied that he did so "willfully" because he thought he had a duty to follow the instructions of his client. He argued that "the reason for the action taken determines whether or not he committed professional misconduct" and that he had to return "the funds to the source from which they came as requested by his client [because] the stated purpose for using them was refused."

But even if Ford did not want to disobey the court order, there is no genuine factual dispute that he nonetheless knew that he was disobeying a valid order. As the Bar Association points out, Ford did not "openly refuse" to comply with the order as allowed by Conduct Rule 3.4(c) [9]; and Ford does not attempt to rely on this exception. There was therefore no genuine issue of material fact as to whether Ford knowingly violated the superior court's order. Accordingly, the hearing committee did not err in resolving the issue by granting partial summary judgment.

■ And, "in any event, we are the ultimate finder of fact in bar disciplinary matters." [10] Ford does not deny that he knowingly violated the superior court's order and his defense that he had to return the money because his client directed him to do so does not absolve Ford's misconduct.[11] Alaska Rule of Professional Conduct 1.2(e) provides: "When a lawyer knows that a client expects assistance not permitted by the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct." This provision indicates that a client's wishes or interests do not supersede a lawyer's ethi-cal obligations. We therefore agree with the hearing committee and the disciplinary board that Ford violated Conduct Rule 3.4(c).

We are aware that difficulties may arise if an attorney honestly believes he or she is caught between obligations to the client and obligations to the court. But Ford could have taken other action. If he believed that the court order was invalid, Conduct Rule 3.4(c) allowed for an "open refusal." [12] If he felt he was obliged to disobey the superior court's order, he should have done so openly by informing the superior court that he could not comply with the order. Moreover, if Ford felt he could not ethically turn over the money to opposing counsel, he could have placed the check in the registry of the court, or could have at least retained the check while seeking appellate review. Instead of immediately seeking a stay, he filed no superior court stay motion and first sought a stay from us three weeks after he had already returned the check. By unilaterally returning the check to the out-of-state payor, Ford placed the funds beyond the reach of the Alaska courts.

If, as Ford argues, the superior court's "Order to Deposit and Disburse" was patently wrong, his best course was to challenge the order and take procedural steps to preserve the status quo during that challenge. He should have sought a stay under Alaska Appellate Rule 205, and if that was denied he could have sought an expedited ruling as to the deposit issue.

Alaska Rule of Professional Conduct 1.16(a) states that a lawyer "shall withdraw from the representation of a client if . . . the

---

**8.** Alaska Rule of Professional Conduct 9.1(f) defines "knowingly" as "actual knowledge of the fact in question." And we have stated that " '[k]nowing' includes the 'conscious awareness of the nature or attendant circumstances of the conduct . . . without the conscious objective or purpose to accomplish a particular result.' " *In re Friedman,* 23 P.3d at 626 (quoting American Bar Association, *Standards for Imposing Lawyer Sanctions* at 17 (1991) [hereinafter ABA Standards]).

**9.** Conduct Rule 3.4(c) allows an "open refusal" to comply with an order "based on an assertion that the order is invalid or that no valid obligation exists."

**10.** *In re Friedman,* 23 P.3d at 626 (citing *In re Frost,* 863 P.2d 843, 844 (Alaska 1993)).

**11.** Although the client has not submitted any affidavit or testimony that he instructed Ford to return the check, we assume that Ford was, as he testified, acting under his client's directions to return the check.

**12.** *See* 2 Geoffrey C. Hazard & William W. Hodes, Law of Lawyering § 30.9 (3d ed.2005) (noting that Model Rule 3.4(c) "permits good faith noncompliance in order to test an order's validity" when done openly).

representation will result in violation of the rules of professional conduct or other law." If Ford believed that complying with the superior court order would violate professional ethics, he might also have petitioned the court to allow him to withdraw as counsel. An attorney may challenge a court order by motion, appeal, or other legal means, but may not simply disregard it.

Finally, we observe that Ford's dilemma resulted from his own failure to foresee that once the funds were in his or his client's possession, the client's former spouse might attempt to attach the funds and might succeed in obtaining a court order allowing execution. Ford could have avoided this potential problem by instructing his client to have the lender deliver the check only after the proposed deal was signed and ordered.

### C. Sanctions

■ Ford argues that the disciplinary board "simply substituted its judgment for that of the hearing committee and increased the sanctions to 90 days without the benefit of hearing the witnesses, argument or observing Mr. Ford at the hearing." (Internal citation omitted.) He further contends that "due process of law requires more than a substitution of judgment by the [disciplinary board], in order for any weight to be given to Board actions."

■ Alaska Bar Rule 10(c)(5) provides that the disciplinary board shall have the power to "review and modify the findings of fact, conclusions of law, and recommendations of Hearing Committees regardless of whether there has been an appeal to the Board, and without regard to the discipline recommended by the Hearing Committee." Nothing in this rule states or implies that the board must conduct an independent evidentiary hearing, order briefing, or hold oral

arguments before issuing decisions. The Bar Association notes that the existence of Bar Rule 10(c)(5) gave notice to Ford of the disciplinary board's prerogative. Regardless, we exercise our independent judgment in questions concerning the appropriateness of sanctions.[13] We accept or reject the recommendation of the disciplinary board based on our reading of the record. For reasons discussed below, we accept that recommendation in this case.

■ We follow "a three-step analysis in imposing attorney sanctions."[14] First, we "address the first three prongs of the ABA Standards for imposing sanctions, determining the duty violated, the lawyer's mental state, and the extent of the actual or potential injury."[15] Second, we "look to the ABA Standards to discern what sanction is recommended for the type of misconduct found in [step 1]."[16] Third, "after determining the recommended sanction, we decide whether aggravating or mitigating factors should affect that sanction."[17]

### 1. Prong One: duty violation, mental state, injury

The hearing committee found that Ford by knowingly disobeying a court order violated the duty imposed by Conduct Rule 3.4(c).[18] The disciplinary board reviewed the record and adopted the committee's findings and conclusions. For reasons explained above, it is clear that Ford violated Conduct Rule 3.4(c).

As to his mental state, the hearing committee found that "Ford knowingly disobeyed the court order when he returned the funds to the lender, in compliance with the instructions from his client, but in violation of the court order." Ford does not contest that he knowingly violated the order. Rather he

13. *In re Friedman,* 23 P.3d at 625.

14. *Id.*

15. *Id.*

16. *In re Buckalew,* 731 P.2d 48, 52 (Alaska 1986), *quoted in In re Friedman,* 23 P.3d at 625 (internal quotation marks omitted).

17. *In re Friedman,* 23 P.3d at 625.

18. The Bar Association argued below that Ford's violation of Conduct Rule 3.4(c) "breached a duty owed to the legal system" and cited ABA Standards § 6.2, which recommends sanctions for, among other things, "failure to obey any obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists . . . ."

claims that he was caught between two conflicting duties. He maintains "that the choice he made was required by his fiduciary duty to his client which he could not ignore because of his professional responsibility to that client under the Rules of Professional Conduct, Rules 1.1 [Competence], 1.2 [Scope of Representation] and 1.15 [Safekeeping Property]." We do not question Ford's sincerity in believing that the code of professional conduct required him to return the check. Even so, such a belief does not seem reasonable. Conduct Rule 1.15, governing safeguarding of client property, is the rule most on point. Yet the comment to Conduct Rule 1.15 declares that:

> Third parties, such as a client's creditors, may have just claims against funds and other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third party claims against wrongful interference by the client, and accordingly may refuse to surrender the property to the client.

Ford's contention that he did not act willfully but only out of a sense of obligation to his client might be more powerful if the ethical conflict had been as strong as he suggests. But given the statement of the comment to Conduct Rule 1.15 that a lawyer "may refuse to surrender the property to a client" and given the duty to protect third parties that was at least potentially at stake, Ford should have realized that he was required to follow the court order, or at least could not act unilaterally to prevent it from being obeyed.

**19.** *Cf. In re Friedman*, 23 P.3d at 631 (noting that there is public injury when lawyer fails to maintain personal integrity by improperly handling entrusted funds).

**20.** The commentary to ABA Standards § 2.3 points out that

> short-term suspensions with automatic reinstatement are not an effective means of protecting the public. If a lawyer's misconduct is serious enough to warrant a suspension from practice, the lawyer should not be reinstated until rehabilitation can be established. While it may be possible in some cases for a lawyer to show rehabilitation in less than six months, it is preferable to suspend a lawyer for at least six months in order to ensure effective demonstration of rehabilitation.

**21.** ABA Standards § 9.22 states:

We do not regard Ford's ethical dilemma as significantly mitigating his knowing violation of Conduct Rule 3.4(c).

With respect to injury, the hearing committee noted that "[r]esisting court orders can interfere with the efficient operation of the court system." The Bar Association properly noted that "Ford's defiance of the legal process was the sort of conduct that by its nature promotes public disrespect for the legal profession." [19] It is not desirable for lawyers to decide when to comply with court orders outside the confines of the exception provided in Conduct Rule 3.4(c).

### 2. Prong Two: presumptive sanction

ABA Standards § 6.22 provides that "suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding." ABA Standards § 2.3 states that "[g]enerally, suspension should be for a period of time equal to or greater than six months." [20]

### 3. Prong Three: aggravating and mitigating circumstances

The ABA Standards recognize eleven aggravating factors.[21] The hearing committee found two aggravators: prior disciplinary offenses and a pattern of misconduct. It noted that "Ford does have a recurrent record of disciplinary actions, including 3 recent mat-

> Aggravating factors include:
> (a) prior disciplinary offenses;
> (b) dishonest or selfish motive;
> (c) a pattern of misconduct;
> (d) multiple offenses;
> (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
> (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
> (g) refusal to acknowledge wrongful nature of conduct;
> (h) vulnerability of victim;
> (i) substantial experience in the practice of law;
> (j) indifference to making restitution;
> (k) illegal conduct, including that involving the use of controlled substances.

ters within less than 10 years" and that Ford had previously been "admonished" for violating a court order. Ford's "substantial experience in the practice of law" is an additional aggravator.[22] The hearing committee found two mitigating factors out of the thirteen recognized by the ABA Standards.[23] The committee found that Ford did not act with a dishonest or selfish motive and promptly disclosed his conduct and fully cooperated with the ensuing proceedings.

 "There is no 'magic formula' for determining how aggravating and mitigating circumstances affect an otherwise appropriate sanction."[24] Indeed, " '[e]ach case presents different circumstances which must be weighed against the nature and gravity of the lawyer's misconduct.' "[25] As we noted above, we are "guided but not constrained by the [ABA Standards] and by the sanctions imposed in comparable disciplinary proceedings."[26] The ABA Standards recommend that "[g]enerally, suspension should be for a period of time equal to or greater than six months."[27] But this court has in some cases imposed suspensions for less than six months. We ordered ninety-day suspensions in *Burrell v. Disciplinary Board of the Alaska Bar Ass'n*,[28] in *In re West*,[29] and in *In re Triem*.[30]

### 4. Our prior cases

The misconduct in *Burrell* involved conflict of interest and violation of a disqualification order.[31] This court ordered that Burrell be "suspended from the active practice of law for 90 days with reinstatement conditioned on passage of the Multistate Professional Responsibility Examination,"[32] reasoning:

> Homer Burrell's representation of Lynne Burrell in a civil suit against James Hanger constituted a conflict of interest, which is a clear and significant violation of the Code of Professional Responsibility. There is also more than adequate evidence in the record which demonstrates that Burrell violated the terms of the superior court's disqualification order. Actions like Burrell's seriously undermine the public's confidence in Alaska's legal system. Additionally, we think it of importance that Burrell demonstrated a lack of appreciation of the wrongfulness of his actions.[33]

In *In re West*, the attorney "intentionally notarized his deceased client's signature,

---

**22.** *See* ABA Standards § 9.22(i). Ford was admitted to the Alaska Bar in 1979.

**23.** ABA Standards § 9.32 states:
Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
 (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
 (2) the chemical dependency or mental disability caused the misconduct;
 (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
 (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;

(l) remorse;
(m) remoteness of prior offenses.

**24.** *In re Friedman*, 23 P.3d at 633 (quoting *In re Buckalew*, 731 P.2d 48, 54 (Alaska 1986)).

**25.** *Id.* (quoting *In re Buckalew*, 731 P.2d at 54).

**26.** *Id.* at 625.

**27.** ABA Standards § 2.3.

**28.** *Burrell v. Disciplinary Bd. of Alaska Bar Ass'n*, 702 P.2d 240, 244 (Alaska 1985). It should be noted that *Burrell* was decided before we adopted the ABA Standards as a reference for attorney misconduct cases in *In re Buckalew*, 731 P.2d at 52.

**29.** *In re West*, 805 P.2d 351, 359–60 (Alaska 1991).

**30.** *In re Triem*, 929 P.2d 634, 650 (Alaska 1996).

**31.** *Burrell*, 702 P.2d at 241.

**32.** *Id.* at 244.

**33.** *Id.* at 243–44.

knowing that the client's widow had falsified the signature at [the attorney's] direction. [His] motive was to induce the state to enter into a negotiated property-loss settlement which would have at least temporarily foundered if the client's fatal heart attack had been revealed."[34] We concluded that "West's extensive practice experience provides the only significant aggravating circumstance"[35] and agreed that mitigating factors included " 'mental disability or impairment at the time of misconduct' " and evidence of " 'good character and reputation.' "[36] West received a ninety-day suspension.[37]

In *In re Triem,* the attorney received a ninety-day suspension followed by probation for neglecting a legal matter entrusted to him by his client.[38] We noted that Triem "has proven that public censure or a period of probation is not effective in influencing his conduct" because he was already on probation for neglecting another client's case.[39] The court decided to impose a ninety-day suspension instead of the six months recommended by the ABA Standards because a "ninety-day suspension will impose considerable hardship and will be a significant sanction for Triem, a solo practitioner in a small community."[40]

Ford's actions in the current case are less serious than the conduct in *In re West* and *Burrell,* and arguably no more serious than the conduct in *In re Triem.* Because we are guided by the sanctions imposed in comparable disciplinary proceedings, it would be inappropriate to impose a longer sentence on Ford simply because the ABA "generally" recommends suspension be at least six months.

Yet we agree that a suspension is necessary. Ford apparently believes that what he did was appropriate and he insists that a lawyer "can refuse to obey an order and be right." Regardless of the propriety of the superior court's order, Ford failed to follow the proper avenues of legal recourse by appealing or seeking a stay. Ford's conduct before and after the incident demonstrates an ongoing disrespect for the legal process.

This is not the first time the Bar Association found that Ford knowingly violated a court order. In 1998 Ford advised a client not to comply with an order to bring the parties' children back to Alaska for trial. Neither Ford nor his client appeared for trial. Whether one regards this as the attorney advising a client to ignore a court order, or as the attorney himself failing to comply with the trial calendering order, the disciplinary board concluded that Ford "knowingly violat[ed] a court order." As in the current case, Ford expressed no remorse for his 1998 conduct. In defending his 1998 conduct, Ford wrote in a letter to Bar counsel that if he had to do it all over again, "I doubt that I would have done much differently."

It is significant that Ford was admonished in 1998 for knowingly violating a court order, the same type of violation that is now before us. We conclude that the 1998 admonition failed to deter Ford from knowingly violating the 2000 order. This indicates to us that he would be equally undeterred by public censure or probation, or any discipline short of suspension.

There is no reported case in which we have imposed a suspension of less than ninety days.[41] Indeed, one member of this court declared that

[a] ninety-day suspension is not so much a substantial penalty as it is an unpaid vacation because it allows [the attorney]

---

**34.** *In re Friedman,* 23 P.3d at 633–34 (describing *In re West* ).

**35.** *In re West,* 805 P.2d at 358. The court noted that "West ha[d] been a member of the Alaska Bar Association since 1971." *Id.*

**36.** *Id.* at 359 (quoting Bar Association hearing panel findings).

**37.** *Id.* at 360.

**38.** *In re Triem,* 929 P.2d at 650.

**39.** *Id.* at 648.

**40.** *Id.*

**41.** In one case the disciplinary board recommended a sixty-day suspension but we determined that a three-month suspension was more appropriate. *Burrell v. Disciplinary Bd. of Alaska Bar Ass'n,* 777 P.2d 1140, 1142, 1145 (Alaska 1989).

merely to delay performing requested services.... If [an attorney's] misconduct is serious enough to warrant a suspension from practice, then he [or she] should be made to suffer the consequences of its actual cessation.[42]

We do not view a ninety-day suspension here as insubstantial. Like Triem, Ford is a single practitioner and a suspension of ninety days will likely result in significant hardship. But we acknowledge that a sixty-day suspension might be perceived as a "vacation." A suspension shorter than ninety days would be unlikely to deter Ford from future misconduct; a suspension longer than ninety days would be out of line with suspensions we have imposed for comparable violations.

## IV. CONCLUSION

We therefore order Ford SUSPENDED from the practice of law for ninety days.

---

42. *In re Triem,* 929 P.2d at 650 (Compton, C.J., dissenting) (internal citation omitted).