In the Disciplinary Matter Involving
Frederick W. TRIEM, Attorney.

Nos. S–6702, S–6732.

Supreme Court of Alaska.

Dec. 6, 1996.

Frederick W. Triem, pro se.

Michael L. Lessmeier, Lessmeier & Winters, Juneau, for Frederick W. Triem.

Mark Woelber, Assistant Bar Counsel, Anchorage, for Alaska Bar Association.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS, EASTAUGH, JJ., and SHORTELL, J. pro tem.*

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Frederick W. Triem, an attorney licensed to practice law in Alaska, appeals a decision by the Board of Governors of the Alaska Bar Association, sitting as a Disciplinary Board (Board), which found that Triem had committed ethical violations in his representation of Robert Zorich and in his professional dealings with attorney Dennis McCarty. Bar Counsel cross-appeals the Board's dismissal of a grievance against Triem filed by David Lubin, the Board's failure to impose sanctions against Triem for his dishonesty before the Area Hearing Committee, and the Board's recommended sanction. We affirm the Board's findings of ethical violations on the Zorich and McCarty grievances. We reverse the dismissal of the Lubin grievance, find an ethical violation in that matter, administer a public censure, and order the payment of restitution for lost interest. In the Zorich matter, we order a ninety-day suspension, probation, and continuing education. In the McCarty matter, we order public censure.

### II. FACTS AND PROCEEDINGS

#### A. Facts

##### 1. Lubin matter

In September 1989 Lubin retained Triem to represent him in the purchase of a limited entry fishing permit. As part of this transaction, Lubin made an earnest money payment of $15,000 to be held by Triem in his trust account. The purchase agreement was contingent upon Lubin getting financing by October 25, 1989. Lubin did not obtain financing, informed Triem of this fact on October 26, and requested return of his $15,000. Triem claimed he told Lubin it was necessary to get verification that the loan was not approved before the money could be returned. Additionally, Triem contends. that he told Lubin from the outset that the $15,000 would not be returned immediately, because the seller could assert a contingent claim against it. Lubin contacted the loan officer, Sara Walsh, and requested that a letter be sent to Triem confirming that his loan had not been approved. Walsh provided this verification in a letter dated October 31, 1989. The same day Triem notified the seller that the "deal is off" and that he was returning the earnest money payment to Lubin. Triem did not return the money to Lubin until January 12, 1990.

Between November 3, 1989, and January 3, 1990, Lubin made repeated calls to Triem's office requesting return of his money. Lubin was unable to reach Triem until January 3, when Triem told him that return of Lubin's money must have slipped his mind. On January 12 Triem forwarded $14,133.82, the $15,000 less a deduction of $866.18 for attorney's fees, to Lubin's stockbroker. On January 20 Triem notified Lubin of the transfer and explained that the delay was due to a contract clause that required a seller release. An invoice for Triem's services was included with this notification. Lubin subsequently demanded that Triem refund the money withheld for attorney's fees.

##### 2. Zorich matter

In 1981 Zorich and his wife discovered that real estate they owned in Glenallen had been conveyed by Joseph Gural[1] and Bernard Miller to Bobby Hartman, and that Hartman and his wife had cleared trees from the lot and were living in a trailer on the lot. Zorich retained Triem to quiet title to this property and to recover damages. After a number of postponements, trial on this matter was held in Glenallen on October 3, 1988. Before trial, Hartman agreed to confess judgment for $2,000 in damages and to execute a quitclaim deed to the Zorichs. At trial the Zorichs prevailed, as assignees of the Hartmans, against Miller and Gural. When the trial ended, the court directed Triem to submit within twenty days findings of fact, conclusions of law, and a proposed judgment. The court informed Triem that upon receipt of these documents it would enter final judgment.

Triem contends that after the trial, in a meeting between Triem, Zorich, and Hart-

---

1. The Zorichs purchased the lot from Gural in 1977.

man on October 15 or 16, Zorich agreed to change the legal strategy for quieting title from pursuing a final judgment to the reconveyance of deeds. Triem began a plan to reconvey deeds, obtaining a quitclaim deed from Bobby Hartman and having it forwarded to Hartman's ex-wife in Texas. Triem did not follow up on this plan. Until Zorich made an independent inquiry after terminating Triem's services in the spring of 1990, Triem was unaware that the quitclaim deed had been signed, returned by Mrs. Hartman and filed. On October 18 and December 3, 1988, Triem had requested a reconveyance from the Fairbanks Title Company, the trustee for the property. Fairbanks Title recorded the reconveyance on February 6, 1989. However, because Fairbanks Title mistakenly sent the conformed copy to the Hartmans, Triem was unaware of the reconveyance. Triem took no further steps to contact Fairbanks Title until December.[2] Triem took this action after Zorich, who had been unable to contact Triem by phone to get a status report, sent Triem a certified letter on October 7, 1989.

Zorich wrote to Triem regarding the status of his case three times in early February 1990. Zorich also contacted the court and learned that Triem had not filed the findings, conclusions, and judgment the court had requested when the trial ended. Zorich and Triem met several times in March 1990 and Triem explained to Zorich that he had not filed the court papers because he felt that a judgment was unnecessary or not in Zorich's best interests. Zorich dismissed Triem and retained attorney Clifford Smith. Smith filed the necessary documents and in May 1990 the court entered judgment for Zorich for $13,500, plus $12,000 in interest, and awarded Zorich unspecified attorney's fees.

### 3. *McCarty matter*

McCarty represented plaintiffs in a suit against Triem and two other defendants.

Triem represented himself and the other defendants until he was disqualified by the judge on a motion by McCarty.[3] Around May 16, 1991, the court ordered defendants to make certain discovery responses. On May 31 Triem drafted a letter to McCarty stating that the ordered discovery was enclosed. On June 4 Triem added a postscript to this letter, which stated in part:

> I did not mail out the enclosures (PAS discovery responses) until yesterday's mail.
>
> Because of the volume of the discovery responses, and the expense of sending them by that route, I have not sent them to you by fax. However, if you want me to do so, please give [me] a call and I'll put them through the phone to you. Otherwise they will be arriving by mail, where I deposited them on my way out yesterday afternoon.

Triem faxed this letter and postscript to McCarty's office on June 4. Upon receipt of this fax, McCarty called Triem's office and requested that the discovery responses be faxed. Triem did not fax the responses to McCarty, and did not notify McCarty that they would not be faxed. Sometime on June 4 Triem retrieved from the post office the package containing the discovery responses. Triem did not notify McCarty that he had retrieved the package from the mail. McCarty never received the discovery responses. Due to their failure to comply with discovery orders, the trial judge later defaulted Triem and the other defendants.

### B. *The Proceedings*

#### 1. *Lubin and Zorich committee proceedings* [4]

Lubin filed his grievance in January 1990. In 1991 Bar Counsel informed Triem that the Bar had completed its investigation. Bar Counsel concluded that Triem, by failing to promptly return Lubin's money, had violated

---

**2.** Triem wrote to Fairbanks Title on December 30, 1989, and received copies of the quitclaim and reconveyance deeds, which he forwarded to Zorich on February 10, 1990.

**3.** Triem was disqualified on the basis that he could not be both the attorney and a witness in the matter.

**4.** Bar Counsel consolidated the Lubin and Zorich grievances under Alaska Bar Rule 22 and one Area Hearing Committee considered these consolidated grievances.

*Alaska Code of Professional Responsibility* DR 9–102(B)(4);[5] by failing to account to Lubin regarding his money, had violated DR 9–102(B)(3); and by improperly withdrawing disputed attorney's fees from the trust account, had violated DR 9–102(A)(2).

Zorich filed his grievance in 1990. Triem responded to the grievance after receiving two time extensions. In 1991 Bar Counsel informed Triem that he had finished his investigation of the Zorich grievance. He found that Triem had neglected a legal matter entrusted to him and thus had violated DR 6–101(A)(3).

The Lubin and Zorich violations, Bar Counsel stated, required public discipline. Triem was provided the opportunity to stipulate to discipline by public censure. Triem was informed that if he rejected this proposal, Bar Counsel would petition for a formal hearing. Triem rejected the proposed discipline. Bar Counsel filed a petition for formal hearing, serving Triem in February 1992. On September 8 the Area Hearing Committee assigned to hear the Lubin and Zorich grievances conducted a consolidated hearing.

Triem and Bar Counsel submitted a stipulated statement of facts to the committee. At the September 8 hearing, Triem testified that he informed Lubin that his money would not immediately be returned due to the need to procure a release from the seller. Triem further testified that after the Zorich trial, he met with Zorich and Hartman and discussed the alternate strategy of pursuing reconveyances of deeds to clear title to Zorich's property. Bar Counsel noted that these explanations by Triem had never been articulated in

the two years since the grievances had been filed, and were not part of the stipulated statement of facts.

Because the committee wanted to hear testimony from Lubin and Zorich on these factual assertions, it held a second hearing. At the second hearing, the committee questioned Lubin about what he was told by Triem when he initially requested the refund of his money. Lubin testified that Triem had not informed him that his money would have to be held due to the possibility of a contingent claim by the seller. The committee also questioned Zorich about whether he had agreed to the alternate strategy of foregoing pursuit of a final judgment. Zorich testified that he did not remember a conversation to that effect, and that he would not have agreed to such a proposal.

In April 1993 the committee conducted a third hearing to hear the testimony of Lubin's loan officer, Sara Walsh. Triem asked the committee to hear this testimony to rebut Lubin's testimony and to support Triem's contention regarding what he had told Lubin about return of his earnest money payment.[6] With Triem's aid, Walsh wrote an affidavit before the hearing. Walsh's affidavit, however, conflicted with her hearing testimony on the key issue of whether Lubin understood that a refund would not be immediately forthcoming due to the possibility of contingent claims. At the hearing, Walsh produced an earlier version of the affidavit which had been prepared by Triem and edited by Walsh. This edited version indicates that Walsh marked off for removal from the affidavit the crucial statement that "Mr. Lu-

**5.** In 1993, the *Alaska Code of Professional Responsibility* was replaced by the *Alaska Rules of Professional Conduct.* Supreme Court Order No. 1123, effective July 15, 1993. In 1994, Alaska Bar Rule 15 was amended to reflect this change. Supreme Court Order No. 1156, effective July 15, 1994. Because the conduct at issue occurred before this amendment, we apply the *Alaska Code of Professional Responsibility.*

**6.** Despite the fact that Triem filed Walsh's affidavit late, the committee considered this material over the objection of Bar Counsel "just in an excess of caution to ... not let the potential for a meritorious defense here be lost due to a timing deadline." Wagner also stated that the committee decided to hear Walsh's testimony because

her affidavit "raised an issue ... going to ... Mr. Triem's truthfulness before the committee." Wagner went on to state:

> Now the truthfulness before the committee issue wasn't one that had been briefed by Bar counsel when this thing first started and it wasn't brought as an allegation but it was one that the committee raised later on in the proceedings .... and had to do with Mr. Triem's testimony that he told Mr. Lubin that the reason that he wasn't going to get his money back at least in part had to do with satisfying the seller.... But that's why we decided that we wanted to hear from Ms. Walsh in particular, to probe her recollection of what exactly she— the conversation she had with Mr. Lubin.

bin said that under the terms of his contract he could not obtain release of the earnest money deposit until he had notified the seller and gotten the seller's release of the escrow deposit." Walsh testified that she sent a copy of the edited version to Triem so it could be corrected, that Triem subsequently sent her the ostensibly corrected affidavit, and that she signed it, apparently without reading it again.

After the April hearing, the committee had thirty days to issue its report under Alaska Bar Rule 22(*l*). However, the committee did not issue its report until eleven months later, on March 22, 1994.

In the Lubin matter, the committee found that Triem had violated DR 9–102(B)(4), DR 9–102(B)(3), and DR 9–102(A)(2). In Zorich, the committee found that "Triem's current explanation for his failure to promptly file findings of fact, conclusions of law and a proposed judgment as instructed by the Court is neither credible nor consistent." Consequently, the committee held that Triem had neglected a legal matter entrusted to him in violation of DR 6–101(A)(3).

As a preliminary matter, the committee noted that these violations warranted public censure or reprimand.[7] The committee also stated, however, that it believed that Triem had been deliberately dishonest in his testimony before the committee.[8] The committee recommended that Triem be suspended from practice for up to one year.

### 2. *McCarty committee proceedings*

In 1991 McCarty filed a grievance asserting that Triem had made false statements to him regarding the service of discovery materials and had failed to respond timely to deadlines. After requesting and receiving a number of extensions, Triem responded to McCarty's grievance in December 1991. On January 14, 1992, McCarty responded by letter to Triem's answer. In early March Triem informed Bar Counsel that he had not received any materials from the Bar or McCarty since he filed his December 1991 response, and he requested that Bar Counsel furnish him with any further comments made by McCarty. Bar Counsel did not respond to Triem's letter. Pursuant to Alaska Bar Rule 22(d), Bar Counsel requested and received approval for issuance of a private written admonition from Area Discipline Division Member Leslie Longenbaugh.

In late March Triem was informed of the result of Bar Counsel's investigation and Longenbaugh's approval of the sanction of a private written admonition. Triem was instructed that under Alaska Bar Rule 22(d) he did not have a right to appeal the private admonition, but that he had thirty days to demand a formal proceeding. Triem was informed that demanding a formal proceeding would vacate the private admonition. Asserting that he had not violated the Code of Professional Responsibility in his dealings with McCarty and that he had been denied the opportunity to respond to all of McCarty's accusations, Triem demanded a formal proceeding. Triem argued that he had not received McCarty's January 14, 1992 letter to Bar Counsel. Bar Counsel explained that this was an oversight, sent Triem a copy of the letter, and gave him thirty more days to review the letter and decide whether to accept the private admonition. Triem did not accept the private admonition and Bar Counsel filed a petition for formal proceedings.

After briefing was completed and without oral argument or testimony, the Area Hearing Committee assigned to McCarty's grievance issued its written report in December 1993 and recommended discipline. The committee found that, by intentionally rendering his statement to McCarty false and by failing to affirmatively correct this statement, Triem

---

7. The committee specified that the following sanctions would be warranted: a censure or a public reprimand, probation, and required participation in continuing legal education on practice management or time management for the neglect in Zorich; a public reprimand for the premature withdrawal of the attorney's fees in Lubin; and a public reprimand or censure for the failure to promptly return Lubin's money.

8. The committee stated, "Triem deliberately testified falsely regarding ... his conversation with Lubin when he stated that he told Lubin he would not return the money until he heard from the seller...."

had acted dishonestly in violation of DR 1–102(A)(4). The committee recommended discipline by reprimand. It denied Triem's motion for reconsideration.

### 3. *Disciplinary Board*

Triem appealed the Lubin/Zorich and McCarty committee decisions to the Board. The Board consolidated the cases, heard oral argument, and issued a written decision. The Board dismissed the Lubin case in its entirety because it found that "significant questions have been raised about the procedures, conduct and delay of the Hearing Committee." The Board accepted the recommendations of the hearing committees with respect to Zorich and McCarty and recommended the sanction of a ninety-day suspension.

## III. *DISCUSSION*

### A. *Standard of Review.*

In the case of *In re West,* 805 P.2d 351 (Alaska 1991), we discussed our role in attorney disciplinary proceedings as follows:

> Though this court has the authority, if not the obligation, to independently review the entire record in disciplinary proceedings, findings of fact made by the Board are nonetheless entitled to great weight. The deference owed to such findings derives from the responsibility to conduct disciplinary proceedings which this court has delegated to the Bar Association. Where findings of fact entered by the Board are challenged on appeal to this court, . . . the respondent attorney bears the burden of proof in demonstrating that such findings are erroneous. . . . As a general rule, moreover, we ordinarily will not disturb findings of fact made upon conflicting evidence. . . .
>
> . . .
>
> In deciding the appropriate punishment, we need not accept the Disciplinary Board's recommendation, but may exercise our own independent judgment.

*Id.* at 353 n. 3 (quoting *In re Simpson,* 645 P.2d 1223, 1226–28 (Alaska 1982), *methodology modified by In re Buckalew,* 731 P.2d 48 (Alaska 1986)).

A more succinct statement of the role of Bar Counsel and that of this court was expressed in *In re Frost,* 863 P.2d 843, 844 (Alaska 1993):

> Bar counsel has the burden of proving the charges of misconduct in a petition for formal hearing by clear and convincing evidence. This court reviews the evidence adduced before the hearing committee independently while giving deference to the findings of the board.

(Citations omitted.)

In exercising our independent judgment as to the appropriate sanction, we are guided by the American Bar Association's *Standards for Imposing Lawyer Sanctions. In re Buckalew,* 731 P.2d at 51–52. While we are guided by these standards, we are not constrained by them. *In re Frost,* 863 P.2d at 854.

### B. *The Board Erred in Dismissing the Lubin Complaint.*

### 1. *Bar Counsel has a right to appeal.*

As a preliminary matter, Triem argues that Bar Counsel cannot appeal the Board's "acquittal" of him because attorney disciplinary proceedings are quasi-criminal in nature and an appeal would violate constitutional protections against double jeopardy.

Triem's argument against the validity of an appeal by Bar Counsel is unpersuasive. "[J]eopardy in either its constitutional or its common law sense[ ] has a strict application to criminal prosecutions only. A disciplinary proceeding . . . is not criminal in nature, but is sui generis, being an exercise of the inherent power and jurisdiction of this court over attorneys as officers of the court." *In re Mackay,* 416 P.2d 823, 838 (Alaska 1964) (footnote omitted), *cert. denied,* 384 U.S. 1003, 86 S.Ct. 1907, 16 L.Ed.2d 1016 (1966).

■ Triem argues that *In re Ruffalo,* 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968), decided after *Mackay* and holding that attorney discipline proceedings are quasi-criminal in nature, dictates that double jeopardy protections apply to such proceedings and thus prohibit Bar Counsel's appeal. *Ruffalo,* however, dealt with the specific

question of what level of due process protection a respondent attorney was owed with respect to notice of the charges against him. *Id.* at 550–51, 88 S.Ct. at 1225–26. As Bar Counsel points out, commentators and courts treat *Ruffalo* as being limited to procedural due process concerns. Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 8.1:102, at 923 (2d ed. Supp.1996) (stating that "virtually all courts have concluded that the Supreme Court's characterization [of disciplinary proceedings as quasi-criminal] ... was made in the narrower context of assessing the applicability of procedural Due Process concerns, such as entitlement to notice of the charges"); *see also, Rosenthal v. Justices of the Supreme Court of California,* 910 F.2d 561, 564 (9th Cir. 1990), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 963, 112 L.Ed.2d 1050 (1991) ("A lawyer disciplinary proceeding is not a criminal proceeding. As a result, normal protections afforded a criminal defendant do not apply." (citation omitted)); *Mississippi State Bar v. Young,* 509 So.2d 210, 213 n. 1 (Miss.1987) ("Most states which have addressed the matter have held that disciplinary proceedings are not so criminal in nature as to evoke double jeopardy protections."). Double jeopardy is a substantive due process protection and therefore is not extended to attorney grievances under *Ruffalo.*[9]

### 2. *The Lubin case should not have been dismissed.*

▮ In dismissing Lubin, the Board asserted that procedures, conduct, and delay by the Area Hearing Committee created potential prejudice to Triem which could not be set aside. The Board, however, did not specify what procedures and conduct created potential prejudice. Triem argues a number of due process violations as well as prejudicial delay caused by the committee and Bar Counsel.

Over four years passed from the filing of the Lubin grievance to the issuance of the committee's report and recommendation. Bar Counsel did not file a petition for formal

hearing until nine months after Triem rejected the proposed discipline in April 1991. Triem filed a number of motions and eventually answered this petition late. After three hearings, the committee requested two extensions and did not issue a report until approximately eleven months after the close of evidence.

A five-year statute of limitations governs the filing of attorney grievances. Alaska Bar R. 18. This reflects a judgment that five years is the outer limit of time in which responding attorneys are able to fairly defend themselves against charges, given the loss of memory, evidence, and witnesses that occurs over time. The alleged misconduct in Lubin occurred between October 1989 and January 1990, and the committee completed its adjudication of the complaint within the five years allowed for *filing* a complaint. This circumstance militates against the contention that the delay so prejudiced Triem's ability to present a defense as to require dismissal.

The timing and source of the delays also militate against the dismissal. Triem, by moving for a more definite statement, was partially responsible for some of the prehearing delay. Most importantly, the longest delay, the late issuance of the committee's report, occurred after Triem presented his defense, and thus did not prejudice Triem's ability to offer a defense. This eleven-month delay was unjustified, but the persons most hurt by it were the victims of Triem's alleged misconduct and the public, not Triem. The public's faith in the system is harmed by lengthy adjudications of discipline matters, but dismissing the matter would simply exacerbate the injury to the public interest.

Therefore, we hold that the delays in the Lubin proceedings do not warrant dismissal of the complaint. Because we find that the other due process concerns raised by Triem, discussed *infra,* are either invalid or harmless, we reverse the Board's dismissal and

---

**9.** We reject Triem's additional argument that the Alaska Bar Rules afford no right of appeal to Bar Counsel, who is only entitled to limited discretionary review by filing a petition with this court under Alaska Bar Rule 25(h). Alaska Bar Rule 22(p) clearly states that Bar Counsel and respondent have a right of appeal within ten days of an order or recommendation of the Board.

independently review the record for the merits of this complaint.

### C. Triem's Due Process Rights Were Not Violated by the Proceedings Below.

#### 1. Function of the committee

■ Triem argues that the Lubin/Zorich committee violated his due process rights by improperly taking on the dual roles of adjudicator and prosecutor. In support of this contention, Triem points to the second and third hearings, in which the committee called and questioned the witnesses.

We have held that due process is not violated when a hearing committee questions or calls witnesses, as long as no predisposition against the respondent is shown. *In re Cornelius*, 520 P.2d 76, 83–84, *aff'd on reh'g*, 521 P.2d 497, 498 (Alaska 1974). Triem has made no showing of a predisposition of the committee against him.[10] In fact, the record indicates that the committee, in an effort to give Triem the fullest opportunity to present his defense, allowed late filings and heard the additional testimony of the loan officer.

#### 2. Limitation of cross-examination

Triem contends that the Lubin/Zorich committee improperly and unfairly limited his cross-examination of Zorich.[11]

Lubin and Zorich were called by the committee to address specific factual issues, namely what Triem had discussed with them regarding his intended actions concerning their interests. The committee instructed Triem to focus on the discrepancies between his testimony and the complainants' affidavits. Triem's cross-examination of Zorich was limited to approximately five minutes. At the expiration of the time allowed by the committee for cross, Triem did not object or request additional time. Rather, Triem acquiesced to the time constraints, stating, "Mr. Wagner, my time's up. I'd love to talk longer, but I'll hold my peace. Thank you." Although Triem cites a number of occasions on which Chairperson Wagner set time constraints on the hearing, Triem did not make any objection at any time during the hearing. Furthermore, despite the fact that a third hearing was held to allow Triem the opportunity to call Lubin's loan officer as a rebuttal witness, Triem apparently did not request that Zorich be returned to the stand for further cross-examination. Consequently, we hold that Triem did not preserve any claim that his cross-examination of Zorich was unduly limited.

#### 3. Telephonic appearance

Triem argues that Wagner's telephonic appearance at the second hearing violated his due process rights because Wagner's inability to observe the witnesses prevented him from being able to evaluate their credibility. This argument is unpersuasive given the express provision in Civil Rule 99 for telephonic appearances by judges: "[t]he court may allow one or more parties, counsel, witnesses or the judge to participate telephonically in any hearing or deposition for good cause and in the absence of substantial prejudice to opposing parties." Alaska R. Civ. P. 99(a). The routine nature of such appearances belies Triem's due process concerns.

#### 4. New charges raised at the hearings

■ Triem argues that the imposition of two new charges against him at the hearing stage of the Lubin/Zorich cases violated his

---

**10.** At various points, Triem alleges that the Lubin/Zorich committee had a secret agenda or that Chairperson Wagner had prematurely made up his mind. As support for these allegations Triem points to Wagner's statement at the end of second hearing that he was "leaning in the direction" of finding that Triem had been dishonest in his testimony before the committee. Wagner made this statement as a part of his instructions to Triem regarding the required scope of his brief on sanctions. This statement was not a premature decision on Wagner's part, however, but rather came after two hearings. Furthermore, the committee held a third hearing in part to allow Triem opportunity to support his testimony before the committee. Therefore, this does not amount to a showing of a predisposition against Triem.

**11.** Wagner had to be in court later that morning, and Triem contends that Wagner notified the parties off the record that the hearing "would be operated at high speed and with little opportunity for Triem to conduct any cross-examination." At points in the second hearing, Wagner did note time limitations.

due process rights. Triem asserts that these charges are failure to communicate with his clients and dishonesty before the committee. Despite Triem's characterization of the charges against him, Bar Counsel only pursued and the committee only found violations alleged in the formal petitions. It is true that communication is an element of the charges of neglect and improper retention of money insofar as Triem's action or inaction would not have been improper if authorized by his clients. It is in this respect that Bar Counsel and the committee analyzed Triem's communications with his clients, and not as a separate charge for failure to communicate generally.

In analyzing the testimony regarding the existence of exculpatory conversations, the committee concluded that Triem had been dishonest to the committee. At the end of the second hearing the committee notified Triem that it was inclined to believe that Triem had been dishonest in his testimony, *see supra* note 6. Triem correctly argues that an attorney cannot be made to answer to charges that arise for the first time at the hearing stage. *Ruffalo,* 390 U.S. at 550–51, 88 S.Ct. at 1225–26. The charges in *Ruffalo,* however, were based on misconduct that occurred prior to the hearing and the charges were brought solely on the basis of testimony elicited at the hearing. *Id.* at 549–51, 88 S.Ct. at 1225–26.

The charge of dishonesty leveled at Triem did not create unfair surprise during a hearing on past conduct, but rather represented the committee's evaluation of, and response to, Triem's conduct at the hearings.[12] This evaluation is inherent when the committee weighs evidence and the credibility of the witnesses before it. Not only was Triem not unfairly surprised, he was given an opportunity to respond to the committee's evaluation of his testimony. Triem was allowed to put on rebuttal evidence and was instructed to brief the propriety of sanctions for misconduct before the committee.

Triem's alleged dishonesty before the committee was not considered as a separate charge subject to independent sanction. Rather, the committee merely took Triem's dishonesty into account as an aggravating factor in determining the proper sanction.[13] The *ABA Standards* specifically include as an aggravating factor "submission of false evidence, false statements, or other deceptive practices during the disciplinary process." *Standards for Imposing Lawyer Sanctions* § 9.22(f) (1991) (hereinafter *ABA Standards* ). Therefore, we hold that Triem's dishonesty during the disciplinary process is an aggravating factor which the committee could properly consider in protecting the integrity of the hearing process.

### 5. *Opportunity to be heard in McCarty*

■ Triem argues that his right of confrontation and his right to notice and an opportunity to be heard were violated by Bar Counsel's failure to provide him with all communications from McCarty to Bar Counsel before adjudicating the charges against him. When this omission was brought to Bar Counsel's notice, he provided McCarty's January 14 response letter to Triem and gave him a thirty-day extension in which to review it before deciding whether to accept the proposed discipline of a private admonition. Triem was not allowed to respond to this letter to Bar Counsel, however, but was merely given the extension to decide whether to accept the proposed discipline or to go on to the next level of adjudication. Triem rejected the private admonition and formal proceedings were initiated. Triem then had ample opportunity to respond to McCarty's letter before the Area Hearing Committee and the Board. Triem nonetheless contends that his due process rights were violated.[14]

---

**12.** The committee's finding of dishonesty by Triem during the disciplinary process is adequately supported by the record and we do not find it to be clearly erroneous.

**13.** The committee separately set forth preliminary sanction recommendations, noted Triem's dishonesty before the committee and thus concluded that "[i]t is therefore the committee's recommendation that Attorney Triem be suspended from the practice of law for up to one year."

**14.** Triem also contends that he did not get a fair trial because Bar Rule 22 allows the imposition of discipline without a right of appeal or a de novo hearing. Triem argues that he was denied a de novo hearing because the committee was

Bar Counsel's role in the initial stage of attorney grievances combines investigative and adjudicative functions, but any discipline proposed by Bar Counsel can only be imposed with the consent of the respondent attorney. Alaska Bar R. 22(d), (h). If an attorney does not consent to a private admonition, this discipline is not imposed and the attorney is entitled to a formal hearing. Alaska Bar R. 22(d). If an attorney refuses to stipulate to discipline, the burden of proof is not shifted to the attorney "to overcome the pre-educating effect of the Bar's pre-emptive strike," as Triem contends; rather, the burden of demonstrating misconduct by clear and convincing evidence stays with Bar Counsel. Alaska Bar R. 22(e).

When Triem rejected the private admonition he was provided the opportunity to respond to all the evidence against him in the proceedings before the committee and the Board. Therefore, because the Bar Rules provide for a de novo hearing following a proposed private discipline and extend other protections to respondent attorneys,[15] we hold that Triem was afforded ample due process in Bar Counsel's initial evaluation of the McCarty case.

### 6. *Prejudicial delay in McCarty*

■ Triem argues that he was prejudiced by Bar Counsel's one-year delay in filing the formal petition in McCarty.[16] Bar Counsel responds that the filing of the McCarty petition was delayed to avoid the hardship to

Triem of having to defend against the Lubin/Zorich charges and the McCarty charges at the same time.

Triem's allegations of prejudice ignore the reality that the facts in McCarty are undisputed. The only open issue was the legal consequence of Triem's actions, specifically whether they represented dishonesty, deceit, fraud, or misrepresentation, in violation of DR 1–102(A)(4). While a one-year delay seems unwarranted, it did not harm Triem's ability to present arguments regarding the application of the law to the facts of his case. Therefore, we find that the delay did not unduly prejudice Triem.

### 7. *Use of Triem's discipline record*

### a. *Reference to prior discipline before adjudication on the merits*

■ Triem argues that Bar Counsel, before the hearing committees and the Board, improperly referred to Triem's past discipline record and to the simultaneous unrelated disciplinary proceedings.

It is not error to refer to an attorney's disciplinary record during consideration of the case on the merits. In addition to issuing factual findings and conclusions of law, hearing committees are required to issue sanction recommendations. Alaska Bar R. 12(i), 22(*l*). To determine the proper sanction, the *ABA Standards* dictate consideration of aggravating factors. *ABA Standards* § 3.0.[17] The aggravating factors

---

prejudiced by the advance information of the Bar Counsel's proposal of a private admonition. This is a specious argument. Upon Triem's rejection of the proposed discipline, the private admonition was vacated. At the formal hearing before the committee, Bar Counsel had the burden of demonstrating misconduct by clear and convincing evidence. Alaska Bar R. 22(e). Because Triem was given an opportunity to respond, the committee's receipt of all the documents evaluated by Bar Counsel did not prejudice Triem.

**15.** The Bar Rules provide other protections against unfairness that may arise from the dual roles given to Bar Counsel in the early stage of attorney grievances. *See, e.g.,* Alaska Bar R. 22(a) (grievance must be served on respondent who, upon request by Bar Counsel, must respond with full and fair disclosure of all facts and circumstances); Alaska Bar R. 22(b) (a duty of confidentiality is imposed on complainants and

all persons contacted during the course of Bar Counsel's investigation prior to the initiation of formal proceedings); Alaska Bar R. 22(d) (Bar Counsel must receive the approval of an Area Division Member before imposing a written private admonition, which may be vacated by respondent); and Alaska Bar R. 25(d) (Bar Counsel must get approval from the Board Discipline Liaison prior to filing a petition for a formal hearing).

**16.** In a letter sent before Bar Counsel proposed private discipline, Triem informed Bar Counsel that he was concerned about his ability to defend the McCarty charges with the passage of time. Triem contends that he was prejudiced by the delay in that two "key witnesses," his secretary and a postal worker, moved away.

**17.** *ABA Standards,* § 3.0 states:

include prior offenses, a pattern of misconduct, and multiple offenses. *ABA Standards* § 9.22(a), (c), (d). If a committee's recommendation is appealed, the Board must review the findings and conclusions and issue its own recommended sanction. Alaska Bar R. 22(n). If the recommended sanction is disbarment, suspension, probation, or public censure, it must be submitted to this court for independent review. Alaska Bar R. 22(n) (citing Alaska Bar R. 16(a)(1)-(4)); Alaska Bar R. 22(r). Knowledge of prior offenses not only is permitted, but is necessary to determine and review sanction recommendations.

The *ABA Standards*, however, contemplate that aggravating factors be considered after a finding of misconduct. *ABA Standards* § 9.1 ("After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose."). Our Bar Rules do not bifurcate the misconduct determination and the sanction recommendation. Independent review of the entire record by the Board and this court, however, provides a safeguard against any prejudicial impact from references to prior discipline during the consideration of the merits of the case. Furthermore, Triem's prior discipline included ongoing supervision of his work and public notice of this supervision. It would be unrealistic to think that the Southeast Alaska legal community was altogether unaware of Triem's disciplinary record.

Therefore, we conclude that it was not error to allow references to Triem's discipline record. Additionally, because the three proceedings could have been consolidated, Bar Counsel's statements to the hearing committees regarding other ongoing proceedings against Triem were also not prejudicial. *Cf. In re Wiederholt*, 877 P.2d 765, 767 (Alaska 1994) (holding that consolidating grievance proceedings is not prejudicial).

In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors:
(a) the duty violated;
(b) the lawyer's mental state; and
(c) the actual or potential injury caused by the lawyer's misconduct; and
(d) the existence of aggravating or mitigating factors.

Even though we hold that the committees' procedures did not prejudice Triem, as an exercise of our rule-making responsibility we hold that it is preferable that Area Hearing Committees bifurcate the misconduct determination and sanction recommendation as much as possible.

**b. *Misrepresentation and misinterpretation of Triem's disciplinary record***

■ Triem argues that Bar Counsel misrepresented and exaggerated his prior discipline. In the petition for a formal hearing in the consolidated Lubin and Zorich matters, Bar Counsel stated that "[d]uring the period he represented Mr. Zorich, Mr. Triem was on probation under Alaska Bar Rule 16(a)(3) for engaging in five previous instances of neglect under the Alaska Code of Professional Responsibility, Disciplinary Rule 6–101." Bar Counsel admitted that this was a misstatement of Triem's discipline record,[18] and corrected this error in its sanctions brief submitted to the committee. Because Bar Counsel corrected this error before the committee made its final decision, the initial misstatement was harmless.

■ Finally, Triem points out that the Board misinterpreted his prior record when it treated Triem's "previous offenses similar in nature to the dishonesty and neglect [alleged in McCarty and Zorich]" as an aggravating factor in the present cases. The hearing committee in Triem's prior disciplinary proceeding specifically held that Triem had not been guilty of dishonesty. Our independent review of the case cures whatever prejudicial impact this misunderstanding of Triem's prior discipline might have had on the Board's recommendation. Therefore, any misunderstanding was harmless error.

**8. *Triem's vindictive prosecution claim***

■ Triem contends that Bar Counsel is guilty of vindictive prosecution in McCarty

**18.** Triem was on probation for four consolidated cases in which Triem was found to have violated Bar Rule 15(a)(4) (previously Rule 11(b)), for failure to answer the formal complaints against him; DR 7–101(A)(2), for a pattern of neglect; and DR 1–102(A)(6), for conduct that adversely reflected on his fitness to practice law.

because, after Triem rejected discipline by private admonition and after Bar Counsel had provided Triem a copy of a draft petition for a formal hearing, an additional charge was added to the petition.[19] Triem argues that this additional charge was in response to Triem's exercise of his constitutional rights. Bar Counsel responds that no evidence of vindictiveness exists and that he sent the copy of the clearly marked *draft* petition to Triem as a matter of professional courtesy in response to Triem's request. Furthermore, Bar Counsel notes that even if the petition sent to Triem had not been a draft, Bar Counsel could have subsequently amended the petition under Bar Rule 22(e) (leave to amend petitions should freely be given as justice requires).

"[A] prosecutorial action is 'vindictive' only if designed to penalize a defendant for invoking legally protected rights." *United States v. Meyer* 810 F.2d 1242, 1245 (D.C.Cir.1987), *cert. denied*, 485 U.S. 940, 108 S.Ct. 1121, 99 L.Ed.2d 281 (1988). In *United States v. Goodwin*, 457 U.S. 368, 381, 102 S.Ct. 2485, 2492–93, 73 L.Ed.2d 74 (1982), the United States Supreme Court recognized that prosecutors may gain new information or realize the significance of information after the initial imposition of charges. The Court held that in such situations the addition or modification of charges before trial does not necessarily support a presumption of vindictive prosecution. *Id.* In reaching this holding, the Court stated that "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Id.* (footnote omitted). Applying *Goodwin*, the *Meyer* court noted that several courts have adopted the view that a presumption of vindictiveness in the pretrial setting will arise if the defendant presents facts, in addition to the modification of the charges, sufficient to show a realistic likelihood of vindictiveness. *Meyer*, 810 F.2d at 1246.

Triem argues that the exercise of his legal right to reject the private admonition and to pursue a formal hearing provoked Bar Coun-

sel to add a new charge against him. However, the additional charge against Triem was added before Bar Counsel had finalized his analysis of the case and notified Triem of the formal charges against him. Under *Goodwin*, modification of formal charges without more would not give rise to a presumption of vindictive prosecution in the pretrial setting. 457 U.S. at 381, 102 S.Ct. at 2492–93. Therefore, even if new charges had been added after the formal petition was filed, Triem's argument would be unpersuasive because there are no additional facts sufficient to show a realistic likelihood of vindictiveness. That Triem's argument is based on differences between a draft petition and the formal petition fortifies this conclusion.

D. *Triem Committed the Violations Found by the Hearing Committees in the Lubin, Zorich, and McCarty Matters.*

1. *Triem failed to promptly return funds which Lubin was entitled to receive, failed to appropriately account for these funds, and improperly withdrew attorney's fees from Lubin's funds.*

 Triem and Bar Counsel stipulated to the facts in the Lubin matter. Therefore, if Triem cannot provide a justifiable excuse for his failure to return or account for the funds, Triem committed the ethical violations charged.

At the committee hearing, Triem testified about an exculpatory conversation with Lubin. This conversation was not included in the statement of stipulated facts. After hearing additional testimony on the issue, the committee found that Triem's testimony was not credible and concluded that Lubin's account of the events was credible.

"As a general rule, ... we ordinarily will not disturb findings of fact made upon conflicting evidence." *In re West*, 805 P.2d at 353 n. 3 (quoting *In re Simpson*, 645 P.2d at 1227). The record evinces no reason to depart from this general rule. Triem has not carried his burden of showing that the com-

---

**19.** The only Petition for Formal Hearing filed in McCarty was filed in April 1993. Bar Counsel sent Triem a copy of a draft petition in October 1992.

mittee's factual findings are erroneous. Therefore, we accept the committee's findings and hold that Triem violated DR 9–102(B)(3) and DR 9–102(B)(4).

■ Disciplinary Rule 9–102(A)(2) dictates that disputed fees may not be withdrawn from a trust account until the dispute is finally resolved.[20] Our independent review of the record reveals that the committee accurately summarized the controlling facts when it stated:

> Under Triem's agreement and practice with Lubin, attorney fees and costs were not "due" until 10 days after Triem issued Lubin a statement itemizing the charges. Triem did not issue Lubin a statement itemizing the charges before withdrawing the fees from his trust account. Accordingly, the money should not have been withdrawn from the trust account because the fees were not yet "due." Moreover, because Triem believed Lubin would dispute the fees, he should not have withdrawn the money from the trust account until the dispute was resolved.

Therefore, we hold that Triem improperly deducted attorney's fees from Lubin's earnest money payment in violation of DR 9–102(A)(2).

■ After an independent review of the appropriate sanction, we conclude that these violations warrant a public censure. The *ABA Standards* state that "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." *ABA Standards* § 4.12. The commentary to this rule reveals that commingling of client and personal funds and the failure to remit client funds promptly are the most common circumstances for which suspension is imposed. *ABA Standards* § 4.12 commentary. The commentary to *ABA Standards* § 4.13, however, recognizes that courts typically impose the lesser sanction of reprimands when law-

yers fail to maintain adequate trust accounting procedures or do not return clients' property promptly. *ABA Standards* § 4.13 commentary. Triem failed to promptly return or provide an accounting of Lubin's money, but he did not convert client funds to his own use or commingle personal and client funds. When Lubin objected to the deduction of fees, Triem redeposited the money and maintained it in his trust account during the pendency of these proceedings. Therefore, we hold that public censure is the appropriate sanction.

In addition, we note that Lubin was denied the opportunity to earn interest on his money during the period it was improperly withheld by Triem. Therefore, pursuant to Bar Rule 16(c)(1), we order that Triem pay restitution for lost interest from November 3, 1989, when Triem received official notice of Lubin's inability to secure financing, to January 12, 1990. Although we hold that Triem's deduction of attorney's fees from the trust account was an ethical violation warranting public censure, neither Lubin nor Bar Counsel have argued that the fees were neither justified nor appropriate. Consequently, we decline to order reimbursement of the deducted fees.

### 2. *Triem neglected a legal matter in Zorich.*

■ Triem and Bar Counsel stipulated to the basic facts in the Zorich matter. As in Lubin, the only dispute concerns what Triem discussed with his client about his representation. The committee heard conflicting testimony about whether Triem discussed and obtained approval for an alternate strategy of clearing title. The committee found Zorich's testimony consistent and credible, and found Triem's testimony not credible.

As stated above, factual findings made in the face of conflicting evidence ordinarily will not be disturbed. *In re West*, 805 P.2d at 353 n. 3. Triem has not shown that the committee's findings with respect to this is-

---

**20.** DR 9–102(A)(2) states:

> (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited [in one or more identifiable bank accounts maintained in the state in which the law office is situated], but

the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

sue are erroneous. Additionally, Triem's general lack of diligence in his representation of Zorich supports and makes more plausible Zorich's account of the facts.[21] Therefore, we find that Triem violated DR 6–101(A)(3), neglecting a legal matter entrusted to him.

Triem's neglect of the Zorich matter occurred while Triem was on probation for ethical violations involving neglect and conduct that adversely reflected on his fitness to practice law. Therefore, Triem has proven that public censure or a period of probation is not effective in influencing his conduct. *ABA Standards* § 4.42 states that suspension is generally appropriate when a lawyer knowingly fails to perform services or engages in a pattern of neglect and causes injury or potential injury to a client. Although disbarment is recognized as the appropriate sanction in more egregious cases,[22] the cases cited in support of suspension reflect a level of misconduct in line with Triem's violations. *ABA Standards* § 4.42 commentary (citing cases involving failure to appear in court, failure to file pleadings, and failure to prosecute). Consequently, we order that Triem be suspended from the practice of law for a period of ninety days. We recognize that the *ABA Standards* disfavor suspensions of less than six months on the theory that such suspensions are a less effective means of rehabilitation. Commentary to *ABA Standards* Rule 2.3. However, in our view, under the circumstances of this case a ninety-day suspension will impose considerable hardship and will be a significant sanction for Triem, a solo practitioner in a small community. Additionally, we adopt the committee's recommendation that Triem be placed on probation and required to participate in continuing legal education on time and practice management. We remand for imposition of appropriate probationary terms and conditions.

### 3. *Triem engaged in dishonesty in McCarty.*

The relevant facts in the McCarty matter are not contested. The only issue is whether Triem's failure to notify McCarty that he had taken actions to render his earlier statements false constitutes dishonesty in violation of DR 1–102(A)(4). In finding a violation, the committee concluded that:

> a statement is no less false because it was rendered false after the statement was made. Mr. Triem intentionally rendered his statement to Mr. McCarty false by his act of retrieving the discovery materials from the mail. By so doing, he had the affirmative duty to contact Mr. McCarty and correct his statement.

Triem contends that Bar Counsel failed to prove, by clear and convincing evidence, the essential element of intent to commit "dishonesty, fraud, deceit or misrepresentation." Triem argues a contract theory to explain the exchange between himself and McCarty. He argues that his offer to send the discovery materials was rejected when McCarty responded with a nonconforming demand that the materials be faxed by noon that day. Given this explanation, Triem contends, Bar Counsel has failed to show that Triem acted with dishonest intent.

We have held that intent is required to find a violation of DR 1–102(A)(4). *In re West,* 805 P.2d at 353. However, it is permissible to infer that an accused intends the natural and probable consequences of his or her knowing actions. *Calantas v. State,* 608 P.2d 34, 36 (Alaska 1980).

---

21. Although Triem began to execute the alternate strategy of deed reconveyances, he did not follow through on this plan in an expedient manner. Triem initially requested a reconveyance from the title company in October 1988, but did not follow up on this request until December 1989. Similarly, although Triem sent a quitclaim deed to Mrs. Hartman for her signature, Triem did nothing to assure the expedient execution and filing of this deed and was unaware that it had been filed until notified by Zorich in the spring of 1990. Finally, Triem argues that a final judgment was not abandoned but its entry merely delayed until a later time. However, Triem took no steps to notify the court that a final judgment would not be immediately pursued or to protect Zorich's ability to pursue attorney's fees and damages at a later date.

22. *ABA Standards* § 4.41 states that disbarment is generally appropriate when a lawyer abandons his or her practice, knowingly fails to perform services, or engages in a pattern of neglect, resulting in serious or potentially serious injury to the client.

Triem's contract explanation of his actions in McCarty is unpersuasive. Triem's letter to McCarty did not *offer* to send the discovery materials; it stated that Triem already had sent them in "yesterday's mail." In his postscript to the letter, Triem offered to fax the materials. The dishonesty found by the committee was not the failure to fax the materials, but Triem's retrieval of them from the post office and his failure to notify McCarty of this fact. It is reasonable to infer that Triem intended to render his earlier statement false when he retrieved the discovery materials and did not notify McCarty of this fact.[23] Therefore, we hold the record provides substantial evidence that Triem had the necessary intent to be act dishonestly in violation of DR 1–102(A)(4).

 Under the *ABA Standards,* false statements, fraud, and misrepresentation can be sanctioned by disbarment, suspension, reprimand, or an admonition. *ABA Standards* § 6.1. Reprimands are generally reserved for cases in which lawyers negligently make false statements or fail to take remedial actions when material information is withheld. *ABA Standards* § 6.13. Although we hold that Triem acted with intentional dishonesty, we impose the sanction of public censure. We note that Triem did not submit false documents to the court and that al-

though his failure to comply with discovery could be broadly interpreted as the withholding of material information from the court, Triem was penalized for this discovery abuse by the trial court's entry of a default judgment against him and the other defendants. Nonetheless, as the committee observed, "integrity is, and ought to be, the cornerstone of attorney ethics. Deceit to gain monetary advantage is no more or less culpable than to gain emotional satisfaction or retribution." Conduct such as Triem's contributes to the perpetuation of the stereotype of lawyers as unscrupulous and unprincipled. To combat this stereotype, we hold that public censure of Triem is warranted.[24]

## IV. *CONCLUSION*

We REVERSE the Board's dismissal of the Lubin complaint and hold, in accordance with the findings of the committee, that Triem violated DR 9–102(B)(4), DR 9–102(B)(3), and DR 9–102(A)(2) by failing to promptly return his client's money, failing to render an accounting of that money, and by improperly deducting attorney's fees. For these violations we impose the sanction of public censure and order Triem to pay restitution to Lubin for lost interest. We AFFIRM the Board's finding of ethical violations in the Zorich and McCarty matters.

---

**23.** Furthermore, as Bar Counsel notes, the Alaska Rules of Professional Conduct recognize a number of instances in which lawyers have the duty to correct misstatements or make disclosures necessary to avoid a misunderstanding. Alaska R. Prof. Conduct 3.3 cmt. (failure to make disclosure to court can be equivalent to affirmative misrepresentation); Alaska R. Prof. Conduct 4.1 cmt. (misrepresentations can occur by failure to act); Alaska R. Prof. Conduct 8.1(b) (lawyer in admission or disciplinary matter shall not fail to correct misapprehension of another); Alaska R. Prof. Conduct 8.1 cmt. (requiring affirmative clarification of any misunderstandings).

**24.** Additionally, we conclude that the Board did not err in considering Triem's failure to acknowledge his violations as an aggravating factor. Triem argues that doing so represents an "unconstitutional condition" requiring him to forego his right to appeal the private admonition to avoid a higher penalty.

The Board's consideration of Triem's refusal, throughout the course of the disciplinary proceedings, to acknowledge his ethical violations did not compromise Triem's right to reject the private admonition and to appeal. Triem was

free to reject the private admonition and petition for a formal hearing. Furthermore, the routine acceptance of this aggravating factor refutes Triem's argument. The *ABA Standards* include "refusal to acknowledge wrongful nature of conduct" as an aggravating factor to be considered in the determination of the proper sanction. *ABA Standards* § 9.22(g). Additionally, many courts, including this court, have recognized this as an aggravating circumstance. *See, e.g., In re Wiederholt,* 877 P.2d 765, 775, app. c (Alaska 1994) (treating absence of acknowledgment of responsibility as an aggravating factor and noting that any hope for improvement is dim); *In re Mann,* 853 P.2d 1115, 1119–20 n. 15 (Alaska 1993) (treating remorse as a mitigating factor); *In re Schuler,* 818 P.2d 138, 143–44 (Alaska 1991) (treating remorse as a significant mitigating factor); *Burrell v. Disciplinary Bd. of Alaska Bar Ass'n,* 777 P.2d 1140, 1144–45 (Alaska 1989) (treating attorney's refusal to acknowledge wrongfulness as an aggravating factor). Finally, it is reasonable to consider the ability to recognize misconduct and to accept responsibility for it to indicate a higher likelihood of rehabilitation.

For neglecting a legal matter entrusted to him by Zorich in violation of DR 6–101(A)(3), we hold that Triem must be suspended from the practice of law for ninety days and placed on probation. We REMAND to the Board for the determination of the terms and conditions of probation, such terms to include the requirement of continuing legal education on practice and time management. For intentional dishonesty to McCarty in violation of DR 1–102(A)(4), we hold that the proper sanction is public censure.

COMPTON, Chief Justice, dissenting in part.

I agree with all aspects of the court's opinion, except for the court's imposition of a ninety-day suspension in the Zurich matter. To protect the public, and to insure that Triem is effectively rehabilitated, I would impose a six-month suspension.

This court has held that the American Bar Association's *Standards for Imposing Lawyer Sanctions* are an "appropriate model for determining sanctions for lawyer misconduct" in Alaska. *In re Buckalew*, 731 P.2d 48, 52 (Alaska 1986). The Standards provide in part that suspensions "should be for a period of time equal to or greater than six months." American Bar Association *Standards for Imposing Lawyer Sanctions* § 2.3 (1992) *reprinted in* Laws. Man. on Prof. Conduct (ABA/BNA) 01:810–11 (1995). Short-term suspensions "are not an effective means of protecting the public." *ABA Standards* § 2.3 commentary, ABA/BNA at 01:811. Suspensions of at least six months help "insure that the attorney has been rehabilitated before he or she resumes practice." *Id.* ("While it may be possible in some cases for a lawyer to show rehabilitation in less than six months, it is preferable to suspend a lawyer for at least six months in order to insure effective demonstration of rehabilitation.").

In imposing a suspension, the court notes that probation and public censure have proven to be ineffective in influencing Triem's conduct. I am skeptical a ninety-day suspension will succeed where probation and public censure have failed. A ninety-day suspension is not so much a substantial penalty as it is an unpaid vacation because it allows Triem merely to delay performing requested services.[1] *See id.* ("In reality, a short-term suspension functions as a fine on the lawyer, and fines are not one of the recommended sanctions...."). If Triem's misconduct is serious enough to warrant a suspension from practice, then he should be made to suffer the consequences of its actual cessation. A six-month suspension accomplishes this end.

**D.H., Appellant,**

v.

---

1. It is not clear to me what "circumstances of this case" suggest that a "ninety-day suspension will impose considerable hardship and will be a significant sanction for Triem, a solo practitioner in a small community." I find no mitigators for "solo" practitioners, or practitioners in a "small community," advanced in the ABA Standards, nor are any readily apparent.